Sullivan,
Feb. 2, 1937.

TONY PRADED, *by his father and next friend*

*v.*

CHARLES MAGOWN.

JOE PRADED *v.* SAME.

*Barton & Andler* (*Mr. Andler* orally), for the plaintiffs.

*McLane, Davis & Carleton* and *George F. Nelson* (*Mr. Carleton* orally), for the defendant.

MARBLE, J. The accident occurred on the cement highway which extends in an easterly direction from Newport to Sunapee. Opposite a group of houses on the south side of the road, in the vicinity of the Gordon mills, a bank seven feet high and nineteen feet in length drops down sharply to within six feet of the north lane of concrete. Before the construction of this cement thoroughfare in 1931, children had been accustomed in winter to slide down this bank, crossing the old road and coming to a stop in the yard of one of the houses.

They were sliding there at noon on the day of the accident. "Quite a crowd" of them, perhaps ten in all, were standing on the south side of the highway watching for automobiles. The plaintiff, who was only six years old, started to slide, when he heard the warning shouts of the other children. He tried to stop the sled by dragging his feet but was unable to bring it to a stop until it reached the northerly edge of the cement. He was there struck by the defendant's car, which was proceeding eastward toward Sunapee.

The defendant testified that, as he approached the point in question, he could hear the children "hollering and playing, sort of flocking around there," but that the windows of his car were "probably nearly closed" and he "didn't hear any words distinctly"; that from what he could see or hear there was nothing to indicate to him that a child was "coming down the other side"; that he veered to the left because of the children and then "saw this boy coming at a tremendous speed down the hill," and that he immediately put on both brakes and brought his car "to a standstill" just as the plaintiff "slid the sled" into his left front wheel.

There was testimony to the effect that a person lying on the bank near the spot where the plaintiff began to coast could see a distance of 150 feet west along the highway, and that a person in an automo-

bile traveling east could see a boy lying on the bank, though probably not "as quickly" as the boy could see the car. From this evidence plaintiff's counsel argue that the defendant should have seen the plaintiff in time to have avoided the accident. The defendant testified that the road was covered with two inches of soft snow, which had fallen during the forenoon, and that it was "spitting" snow as he drove along. One of the plaintiff's witnesses testified that "it had hailed that night" and "it was kind of icy." Another stated that "it was a little slippery." In this situation the defendant was fully justified in confining his attention very closely to the traveled portion of the highway, and could not be found negligent merely because he failed to see the plaintiff sooner than he did.

Furthermore he would have been remiss in his duty if he had ignored the presence of the children on the right-hand side of the road. These children did not call out to the plaintiff until he was halfway down the bank. By that time the defendant was so near that even if he ought at once to have interpreted their shouts as a warning to some one on his left, any finding that he then had time to take preventive action would be highly conjectural.

The defendant was asked if the windshield wiper was in use that day. He replied: "I can't remember whether it was being used that minute or not. It is hard to remember." To the inquiry, "Can't you see your mudguards through the windshield?" he answered, "Oh, yes." He also testified: "Tony was standing leaning on the fender, looking at me, when I got out the door. ... I had to get out of the car before I could see him .... I don't know [why I didn't see him before], but I didn't."

It is suggested that the jury might well find on this testimony that the windshield wiper was not working and that the defendant's vision through the windshield was at least partially obscured. The evidence is wholly insufficient to warrant any such inference. There is no evidence that it was snowing enough to require the use of a wiper, nor does it appear that the plaintiff was standing at the fender before the defendant opened the door.

The fact that the defendant may have been driving on the left lane of concrete when the collision took place is unimportant. The law of the road (P. L., c. 90, s 1) goes no further than to regulate the acts of those meeting and passing each other on the highway with vehicles "and leaves their rights and liabilities, in all other particulars, unaltered, and to be regulated and determined by the principles of the common law." *Brooks* v. *Hart*, 14 N. H. 307, 311. The statute

"makes no reference to conduct when the route of one lies across that of the other. It contemplates a situation where, if the statute is obeyed, there cannot be a collision because their paths never meet." *L'Esperance* v. *Sherburne*, 85 N. H. 103, 105. The defendant had no reason to anticipate the presence of the plaintiff and, having rightfully turned to the left, he was not liable merely because he helped to create a dangerous situation. *Schwotzer* v. *Sherwood*, 87 N. H. 486.

It is also suggested that "the jury might have felt that the defendant in not veering to the right instead of stopping on a straight course was negligent." The answer to this suggestion is that the time was too short for anything but instinctive action. *Miller* v. *Daniels*, 86 N. H. 193, 196, and cases cited.

The defendant testified that he had never seen boys sliding on that particular hill and did not know that they were accustomed to slide there. For some years previous to the accident he had passed over the highway "perhaps twice in three weeks." "Some weeks" he did not go over it at all. The hour at which he passed over it on any of these occasions is not shown. The coasting would not be frequent during school hours. With reference to the day of the accident one of the children testified: "We had to go to school in the morning, but they were sliding at dinner time when they had a little spare time." The road had been entirely reconstructed the year before and cement lanes installed. The plows in clearing these lanes would necessarily leave an "accumulation of snow around the edges of the road." The extent to which, in view of these facts, sliding across the cement was possible does not appear. At any rate, the evidence is insufficient to charge the defendant with notice of the alleged custom.

All the evidence indicates that the defendant's speed was not excessive and that he made a quick stop. The plaintiff stated that he was dragged only "a little bit." He did not appear to be seriously injured, at least at the time. The defendant took him at once to the hospital where he was examined and pronounced able to attend school. The defendant then took him to school where he remained until his mother called for him that afternoon.

Since there is no evidence from which it could fairly be found that the defendant was negligent, it is unnecessary to consider the applicability of the coasting statute (P. L., *c.* 378, *s.* 12).

*Judgments for the defendant.*

PAGE, J., was absent: the others concurred.