JERRY BEROUNSKY *v.* WILLIAM F. OGDEN.

*Hughes & Burns* (*Mr. Burns* orally), for the plaintiff.

*Paul E. Nourie* (by brief and orally), for the defendant.

MARBLE, J. The accident occurred about two miles south of Dover on an easterly curve in the highway leading from that city to Portsmouth. The road at that point comprised two lanes of cement, each ten feet wide, flanked by a twelve-inch strip of tarvia and a gravel shoulder six or seven feet in width. A line of electric light poles, situated about eleven feet west of the westerly edge of the cement, ran approximately parallel to the highway, the general direction of which was north and south. Somewhat nearer the cement a few black-and-white posts, without guardrail or cable, had been installed. To the west of these posts the ground declined rather sharply to an open field.

The time of the accident was about 9:30 o'clock in the evening. The plaintiff was driving from Dover to Portsmouth. He testified that as he approached the curve in question he observed the headlights of the defendant's automobile, which appeared to be coming toward him; that when he was within seventy-five feet of these lights he saw that the car was on the westerly side of the highway; that

he then decreased his speed, which did not exceed thirty or thirty-five miles an hour, and sounded his horn in the expectation that the defendant would turn to the right, and that he had reached a point thirty-five or forty feet from the lights when he first became aware of the fact that the car was stationary.

He described the position of the car as about in the middle of the road with its right-hand wheels on the center line of the highway. He further testified that he applied his brakes and turned to the right, intending to pass between the car and one of the black-and-white posts, situated about seven feet west of the westerly edge of the cement (a space which gave him "lots of room to go by"), when he suddenly discovered a large motor truck parked about ten or twelve feet south of the car. This truck was headed toward Portsmouth and occupied practically the entire width of the shoulder. It was not visible to him until he "got clear of the headlights of the Ogden car." To avoid hitting the truck he turned farther to the right and in so doing struck the post and an electric light pole, receiving thereby the injuries for which he seeks recovery.

The defendant was an inspector for the Boston & Maine Transportation Company, having charge of that company's equipment at various terminal stations. On the evening of the accident he happened to meet one of the company's motor trucks going toward Portsmouth and noticed that a marker light had apparently burned out. He halted the truck and, while the bulb was being replaced, parked his car at the rear of the truck, headed north with the headlights on, as a means of warning approaching traffic.

He denied the plaintiff's assertion that his car was on the cement and stated definitely that it was on the shoulder of the road within a foot and a half of one of the black-and-white posts. The position of the truck and the location of wheel marks alleged to have been made by the plaintiff's car were also in dispute. But this conflict in the testimony merely presented issues of fact for the determination of the jury. The motions for a nonsuit and directed verdict were correctly denied. *Putnam* v. *Bowman,* 89 N. H. 200.

The defendant excepted to the submission of the case to the jury under the emergency doctrine. The plaintiff testified that the headlights of the defendant's car obstructed his view of the motor truck and that he did not see the truck until it loomed up in front of him. "An emergency being a sudden unexpected occurrence calling for immediate action to meet its dangers, the sufficiency of the evidence on the issue therefore appears." *Kardasinski* v. *Koford,* 88 N. H.

444, 446. Nor can the defendant's contention that the plaintiff "negligently brought about the emergency" (*Precourt* v. *Driscoll*, 85 N. H. 280, 290) be sustained as a conclusion of law.

The exceptions to the admission of evidence appear to be without merit but need not be considered in detail since the verdict must be set aside.

The plaintiff requested an instruction to the effect that the jury might consider the law of the road (P. L., *c.* 90, *s.* 1) as bearing on "the duty of the defendant to have his car to the right of the center of the traveled part of the road as the plaintiff approached and was about to pass." The Presiding Justice neither granted nor denied this request in express terms, but instructed the jurors that the statute "probably" had some application and that they might apply it in so far as they wanted "to use it" and "to apply it." The defendant's exception to the "granting" of the request on the ground that the law of the road had no application to the case may fairly be said to constitute a general exception to that part of the charge relating to section 1 of chapter 90 of the Public Laws.

The law of the road provides that "If a person traveling on a highway with a vehicle meets another person so traveling in the opposite direction, he shall seasonably turn to the right of the center of the traveled part of the road, so that each may pass the other without interference." Since the defendant was not traveling at the time of the accident, neither his conduct nor that of the plaintiff in passing him was subject to that particular statute. See *Reed* v. *Company*, 84 N. H. 156, 159; *Praded* v. *Magown*, 88 N. H. 405, 407, 408, and cases cited; *Nickerson* v. *Bentley*, 89 N. H. 533, 534; 3-4 Huddy, Automobile Law (9th *ed.*), *s.* 112, *p.* 180.

The court instructed the jury in part as follows: "The statute [P. L., *c.* 90, *s.* 1] requires that opposing traffic turn, the operators of opposing traffic, each turn to their respective rights, but in this particular case the evidence is practically, there's no conflict in the evidence that at the time that Mr. Berounsky's car passed the Ogden car the Ogden car was not in motion and so there is not, the statute itself hasn't the application that is generally resorted to in so-called head-on collisions, but you may consider the statute . . . as bearing upon the conduct of the plaintiff in turning to the right as he was about to meet and pass the defendant's car. The evidence, I believe that it is his claim that he first discovered that the defendant's car was not in motion when he was some forty feet away from it and that he did turn to his right immediately thereafter so on the question

of his conduct at that time you may consider whether or not there was any violation of Public Laws, Chapter 90, Section 1. That is bearing on the conduct of the plaintiff in turning to the right as he was about to meet and pass the defendant's car."

Elsewhere in the charge attention is called to the fact that although, strictly speaking, "there is no such thing as the right side and wrong side of the highway," it is the custom for travelers to keep to their right. Nowhere in the course of his instructions, however, did the Presiding Justice definitely state that this custom was merely a circumstance to be considered on the question of the plaintiff's conduct or that, under the conditions disclosed by the testimony, the plaintiff might lawfully have turned to the left.

The plaintiff's acts were to be tested by the rule of reasonable care and not by the law of the road. Yet, under the instructions as given, the jurors were permitted to regard his conduct more leniently because he did not violate a statutory mandate inapplicable to the situation.

*New trial.*

All concurred.