Rockingham, June 2, 1942. } No. 3328.

FRANK PETERSON *v.* GEORGE PAPPACOSTANTIS.

RICHARD PETERSON, *by his next friend, v.* SAME.

ROBERT PETERSON, *by his next friend, v.* SAME.

KOULA PAPPACOSTANTIS *v.* SAME.

STEPHEN PAPPACOSTANTIS, *by his next friend, v.* SAME.

PAULINE PIERROCHAKOW *v.* SAME.

MARY PIERROCHAKOW, *by her next friend, v.* SAME.

KRISTIE PIERROCHAKOW *v.* SAME.

ALICE ADAMS *v.* SAME.

*William H. Sleeper*, for the plaintiffs.

*Sewall, Varney & Hartnett*, for the defendant.

MARBLE, J.   The accident occurred in the outskirts of Portsmouth at the intersection of Woodbury Avenue with the northerly section of the Maine-New Hampshire interstate highway.   This particular section, comprising double lanes of cement, was designed for westbound traffic leaving the interstate bridge.   The southerly section, which was designed for eastbound traffic entering the bridge, crosses Woodbury Avenue about fifty feet south of the northerly section.   These sections are referred to in the evidence as "approaches" to the interstate bridge.

At the time of the accident the bridge had not been opened to the public and the approaches in question were unfinished, the concrete having been laid merely "in its rough state."   Work on the project had been suspended during the winter, and "barriers were maintained as far as possible" to prevent access to either approach.

Everett Dube and his wife occupied the upstairs apartment in a house owned by the plaintiff Frank Peterson.   The Peterson family occupied the downstairs apartment.   On the day of the accident the members of the two families and a few guests "were all gathered there to celebrate Mr. Peterson's birthday."   Shortly before five o'clock in the afternoon Dube volunteered to take two of the party to Dennett Street in his car.   He testified: "I started from the front

of the house to take my own car, which was a coupé, and on the way out Mr. Robert Peterson and Richard Peterson decided they would like to go along, so, unbeknown to Mr. Frank Peterson, I got into his car and drove off, and I drove down to Dennett Street with Mr. Peterson, Jr. and Mrs. Linskey and let them off . . . I turned around and . . . we all decided we would like to take a ride, so . . . I swung right . . . [and] when we come to the new road we decided we would ride down the new road, there being nothing there to prevent me, no horses, no obstructions. . . .

"Coming up . . . on the right-hand side of the new road, . . . I observed the Pappas [defendant's] car just hitting the rough part of Woodbury Avenue intersection, . . . his front end seemed to bounce up and down as though he had hit it pretty hard, . . . he . . . slowed right down just as though he had seen me and . . . was going to stop and let me go through. In the meantime I had taken my foot off the gas to slow my car down. When he slowed down I started to put my foot back on the gas again and [that] brought me right up to the corner . . . and I was going ahead through, and the next thing I knew he was across . . . right in front of me . . . and we just came together."

Dube was driving west on the northerly approach to the bridge. He knew that this section of the highway was in process of construction and not open to traffic. The defendant was proceeding north on Woodbury Avenue. The plaintiffs' evidence tended to prove that the rough part of the avenue, referred to by Dube, lay immediately south of the southerly approach to the bridge, that the defendant drove very slowly over this stretch of highway, which was described variously as all dug up, filled with little thank-you-ma'ams, and bumpy, and that when he reached the fifty-foot section between the two approaches, which was not so rough, he increased his speed very perceptibly.

The plaintiffs Richard and Robert Peterson were occupants of the Peterson car; the other plaintiffs seeking to recover for personal injuries were occupants of the defendant's car. The evidence is conflicting as to whether or not Dube was intoxicated.

It is our conclusion that all the actions must fail, since the evidence is wholly insufficient to sustain a finding of fault on the part of the defendant.

On the day before the accident the defendant had driven from his home in Somersworth to Somerville, Massachusetts. As he passed along Woodbury Avenue he noticed the "new highway" and "saw

there was construction work going on." He didn't see "any automobiles or trucks on the new highway that day" and "didn't think it was open for travel;" he had "heard that they were constructing it."

He was returning from Somerville on the Sunday in question. As he approached the interstate highway he found the surface of the road was so rough that it was necessary to center his attention on the operation of his car. See *Praded* v. *Magown*, 88 N. H. 405, 407. He could not be deemed careless merely because he "did not look out for dangers he had no occasion to anticipate" (*Piateck* v. *Swindell*, 84 N. H. 402, 403), and there is nothing in the evidence from which the jury could fairly infer that he had any reason to expect the presence of automobiles, whether those of workmen or of joy riders, on the unfinished lanes of cement. He testified that he did not see the oncoming car until an instant before it struck him and, on the evidence, no finding to the contrary could properly be made.

The motions for directed verdicts should have been granted. *Miller* v. *Daniels*, 86 N. H. 193; *Praded* v. *Magown*, 88 N. H. 405. This result makes it unnecessary to consider the questions presented by the remaining exceptions.

*Judgments for the defendant.*

All concurred.