700    COURT OF ERRORS AND APPEALS.

Miller v. Del. River Trans. Co.    *85 N. J. L.*

ISAAC MILLER, PLAINTIFF-RESPONDENT, v. DELAWARE
RIVER TRANSPORTATION COMPANY, DEFENDANT-
APPELLANT.

Submitted December 4, 1913—Decided March 16, 1914.

1. Where it appeared, in an action for injuries sustained by a
plaintiff, as a result of falling into a hole in the defendant com-
pany's wharf, while returning, in the nighttime, from the river end
of the wharf where he had gone in expectation of receiving a
shipment of goods to him, by one of the defendant's vessels, and
whither he had been accustomed to go, both by day and night,
for the purpose of receiving goods shipped to him on defendant's
boats—*Held*, sufficient to warrant a finding that there was an
implied invitation to the plaintiff by the defendant on that par-
ticular occasion to go to the river end of the wharf, where he
was injured.

2. The fact that requests to charge were presented to the court,
which the court failed or refused to charge, will not make such
failure or refusal the basis of an appeal, unless it further appears
that the party presenting the requests, made, at the time, ob-
jection to the failure or refusal of the court to charge each
specific request.

3. Where the court charges a request in other terms than those em-
bodied in the request, the party desiring to take advantage of
this must object to the request as charged and to the refusal to
charge as requested.

4. The new Practice act does not relieve a party from pointing out
at the trial to the judge the portions of the charge to which he
objects as heretofore, nor from making objection to a refusal to
charge a request, if it is intended to make them the basis of an
appeal.

5. The only change made by the new Practice act in that regard is
that bills of exceptions are no longer necessary.

6. A plaintiff's right to recover for personal injuries due to the
negligence of another is entitled to damages for any disability he
has sustained, including loss of earning capacity, irrespective of
whether any definite income is proved or not.

On error to the Supreme Court, Burlington Circuit.

For the appellant, *Grey & Archer*.

For the respondent, *Albert S. Woodruff*.

The opinion of the court was delivered by

KALISCH, J.   The appellant appeals from a judgment obtained against it by the plaintiff for damages sustained by him as a result of falling into a hole made by the temporary removal of a plank, in the appellant's wharf at Burlington. The plaintiff was a huckster, and on the day he received his injuries was expecting a consignment of fruit shipped on one of the defendant's steamboats from Philadelphia to Burlington. It was in the month of February and the weather was very cold and the plaintiff drove his horse and wagon to the wharf to receive the shipment. The boat was late in arriving. On the land end of the wharf was defendant's freight house with a covered platform adopted for and from which wagons were loaded. The boat did not arrive until eight-thirty that evening. The plaintiff left his horse and wagon at the land end of the wharf and went to the river to see if the boat was about to dock, and if so, to return and back his wagon on to the wharf and close to the boat, to load his wagon, because of the freezing weather and perishable quality of the consignment. He was returning to his wagon when he fell into a hole in the wharf which he claims he did not observe on account of the darkness. The appellant, at the close of the case, asked the court to direct a verdict for the appellant which was denied. It is the refusal of this request which is made a basis of one of the grounds of appeal.

The appellant's argument on this point is that it was not shown that the plaintiff had been legally invited to be in the place where he was at the time of the accident, but, on the contrary, the regular practice was for him to back up his wagon to the covered platform and receive the fruit delivered under the appellant's shed instead of going on the open part of the wharf where he was. But there was testimony on the part of the plaintiff that tended to establish that he had been accustomed for a long period of time both in the day and nighttime, of receiving the shipments made to him on the river end of the wharf directly from the boat, and this was especially so when the boat was late and the weather cold. This testimony was sufficient, if accepted by the jury to have warranted

a finding that there was an implied invitation, by the appellant, to the plaintiff to go to the river end of the wharf, at least, on the occasions stated.

But it is argued, by appellant's counsel, even though there was an implied invitation to the plaintiff to go out upon the wharf on foot on this occasion, he had no invitation to pass under a crane, the place where he met with his injury, for the reason that at the time the plaintiff went thereunder, there was a heavy chain hanging down from the middle beam of the structure which operated as notice to him that the passageway was not to be used.

From the exhibit and uncontroverted proof in the case it appears that the entire wharf was open for foot passengers and vehicles with the exception that near the river end was an open structure consisting of three upright posts standing in direct line at short intervals of each other which served to divide that space for a short distance into two passageways. The upright posts supported the ends of beams extending from the side of the freight house over the abutting drive and passageway, which structure, called a crane, was used to support an endless chain for loading and unloading wagons carrying articles of great weight. The appellant's contention, however, cannot prevail, for the reason that the plaintiff and his witnesses denied that there was any chain hanging there at the time or anything else tending to indicate that the passageway of this part of the wharf was not intended for use. Besides, there was testimony tending to establish that it was the custom of the plaintiff to go where he was, in looking after the fruit consigned to him. These circumstances presented purely a jury question which appears to have been properly submitted to them by the court.

An exception was taken to the refusal of the court to charge the third, fourth and sixth requests, respectively. The third request was as follows: "If you find that the plaintiff was negligent in passing at night under the crane or in not seeing the hole, when he did so pass, he cannot recover." An examination of the judge's charge that he substantially charged the request, though not in the collocation of words of the re-

NOVEMBER TERM, 1913. 703

*56 Vroom.*     Miller v. Del. River Trans. Co.

quest, and this he was not bound to do. *Consolidated Traction Co.* v. *Chenowith,* 29 *Vroom* 416; 32 *Id.* 554.

The same answer also applies to the exception to the refusal of the court to charge the fourth request.

Although the appellant argued in the brief a refusal to charge a seventh request, and while the record shows that such a request was made, it does not appear that any objection was made to the refusal of the court to charge it; nor was there any objection made to what the court said on the subject of the request.

The fact that requests to charge were presented to the court, which the court failed or refused to charge, will not make such failure or refusal the basis of an appeal, unless it further appears that the party presenting the requests to charge made, at the time, objection to the failure or refusal of the court to charge each specific request. And where the court charges a request in other terms than those embodied in it, if counsel desire to take advantage of this, an objection should be taken to the request as charged and to the refusal to charge as requested. The new Practice act does not relieve a party from pointing out at the trial to the judge the portions of the charge to which he objects as heretofore, nor from making objection to a refusal to charge a request, if it is intended to make the same the basis of an appeal. The new Practice act has made no change in that regard, only in that bills of exception are no longer necessary.

The remaining question to be considered is the one relating to damages. The court was requested to charge: "There is no proof of loss due to lessening of earning capacity, payment of expenses for medicine or physicians except one dollar. No other damages could be awarded except for pain and suffering." The court charged the jury that the plaintiff was entitled to damages for any disability that he had sustained. This was a correct statement of the legal rule. The appellant's assumption is that *New Jersey Express Co.* v. *Nichols,* 4 *Vroom* 434, holds that unless some proof is made of the plaintiff's income or of his earning capacity, nothing can be awarded on that account. This is a false conception of what was decided by

the court.  The question there was whether testimony of the plaintiff's average income was admissible as guiding the jury on the question of damages for disability.  It was held that such testimony was admissible; but where there is a clear disability the jury may, undoubtedly, award what in their best judgment, as reasonable men, should be awarded, irrespective of whether any definite income is proved or not.  The evidence, as is said by Mr. Justice Depue in *New Jersey Express Co.* v. *Nichols, supra* (at *p.* 37), is "to guide them in their exercise of that discretion which to a certain extent is always vested in the jury."  There was testimony which tended to show that the plaintiff was unable to do as much and as hard work as he had been able to do before the accident, and though he was afflicted with a pulmonary disease, the value of the evidence was for the jury.

The judgment will be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, SWAYZE, PARKER, BERGEN, MINTURN, KALISCH, BOGERT, VREDENBURGH, WHITE, HEPPENHEIMER, JJ.  11.

*For reversal*—None.