Hillsborough, }
Jan. 2, 1934. }

HAROLD F. RAMSDELL *v.* JOHN B. VARICK CO. *& a.*

JOHN B. VARICK CO. *v.* HAROLD F. RAMSDELL.

JAMES H. SMITH *v.* SAME.

ANNIE SKIBNOSKI, *by her next friend, v.* SAME.

458

*Wyman, Starr, Booth & Wadleigh* (*Mr. Wyman* orally), for Harold F. Ramsdell.

*Sullivan & Sullivan* (*Mr. Frederic Parker* orally), for John B. Varick Co., James H. Smith and Annie Skibnoski.

Marble, J.   It is conceded that the skidding of the Chevrolet car could properly be attributed to Smith's manner of driving on the icy road and that his speed and conduct under the circumstances warranted a finding of negligence.   *Burns* v. *Coté, ante,* 167.

The Varick company contends, however, that a verdict for the defendant should have been directed in the case of *Ramsdell* v. *Company* on the ground that there is no evidence that Smith at the time of the accident was acting as its agent.   This contention is without merit. Smith lived a few miles south of Derry and worked for the Varick company in Manchester.   The company furnished him the car and permitted him to use it as a means of conveyance to and from his work. He expressly stated that in so driving the coupé he was using it "on the business of the Varick company."   This testimony was admissible.   *Riley* v. *Bank, ante,* 329, and cases cited.   The company paid for the oil and gasoline.

On the evidence it could be found that the car was being driven according to Smith's usual practice to facilitate the joint interest of Smith and his employer.   *Tuttle* v. *Dodge,* 80 N. H. 304, 309.   The cases of *McCarthy* v. *Souther,* 83 N. H. 29, and *Sauriolle* v. *O'Gorman, ante,* 39 are not in point.   In the former case, Souther (the employee) owned the car and was entitled to its exclusive possession.   His employer "had no more charge or control over Souther's means and

manner of transportation than if the travel had been by train." In the *Sauriolle* case the driver of the car at the time of the accident was rendering a service "distinctively his own, and entirely disconnected with his master's service."

The fact that Smith may have had no authority to invite others to ride with him is unimportant. If in driving to Manchester he was acting within the scope of his employment, the company would be liable for the results of his negligent conduct toward other highway travelers, even though it might not be liable for injury inflicted upon a passenger whose unauthorized presence bore no relation to the company's business. The fact that an agent may act "in this dual way" is recognized in *Dearborn* v. *Fuller*, 79 N. H. 217, 218.

Ramsdell was engaged in soliciting advertisements for newspapers. Both he and his wife testified that his commissions averaged between $40 and $50 a week. Ramsdell had made this same statement in his deposition taken before trial. On cross-examination he stated that this amount was his "best estimate," that he kept no records, but that after the taking of his deposition he had talked with his employer on the subject and "accepted his word." Counsel then asked that "this testimony of $40 to $50 a week be stricken from the record as hearsay." Ramsdell did not attempt to repeat what his employer had told him. There is nothing to indicate that the conversation supplied him with a "ready-made" statement or that the testimony objected to did not represent "the genuine expression of his present belief." 2 Wig., Ev. (2d *ed.*) s. 786, *p.* 82. As such it was properly allowed to stand.

Subject to exception, Ramsdell testified that there was "absolutely nothing" he "could have done to avoid the accident" that he "didn't do." This testimony was admissible. *Morrison* v. *Railroad, ante,* 176, 181, and cases cited. The preliminary question of qualification was for the trial court. *Dimock* v. *Lussier, ante,* 54, 59.

Ramsdell's leg was broken in the collision. His counsel asked a physician this question: "And in the event that this bone should be broken again what are the chances of recovery as against recovery of a normal bone?" Opposing counsel objected as follows: "I think that is too remote a possibility to be considered in this case. It presupposes something that has no relation to this action whatever." Subject to exception, the physician answered: " . . . a bone that is in the condition that this bone is would not be as likely to heal as a normal bone." He had already stated that the bone in its present condition was "more susceptible to being broken than a normal bone."

The admission of the evidence objected to did not violate the rule against "double speculation" (1 Suth., Dam., (4th *ed.*) *s.* 123) or the rule announced in *L'Esperance* v. *Sherburne*, 85 N. H. 103, 110-113. The contingency of another fracture and the consequences likely to result therefrom had a direct bearing on Ramsdell's freedom of action. With unusual trouble in prospect should another accident occur, he was bound to be exceptionally careful. He could not with impunity "use his leg as an ordinary man could." *Dix* v. *Company*, 76 N. J. Law, 178, 179. It follows that the evidence did not concern a possibility too remote to be considered or presuppose something that had no relation to the case. No motion was made to limit the use of the evidence, and the present contention that "the ruling was prejudicial" was not advanced at the trial. Under such circumstances the exception is unavailing. *Lovett* v. *Railway*, 85 N. H. 345, 353.

The question of Annie Skibnoski's negligence was properly submitted to the jury. Miss Skibnoski was a student attending a business college in Manchester. She was riding on the same seat with Smith and Morin. She described the road as very, very slippery, and knew that it was necessary for Smith "to go particularly slowly over that road." It could be found that she made no remonstrance although Smith, who left Derry later than usual that morning, was driving at an excessive rate of speed.

A person riding in an automobile may properly be charged with negligence if he has an adequate opportunity to "influence the situation for safety" yet sits by without protest and "permits himself to be driven carelessly to his injury." 1 Berry, Automobiles (6th *ed.*), *s.* 665, and cases cited. The duty to remonstrate is not, however, an absolute one but depends on the circumstances of the particular case. 5-6 Huddy, Automobile Law (9th *ed.*), *p.* 265, and cases cited; *Noel* v. *Lapointe, ante,* 162, 165.

Exception was also taken to the denial of the following request for instructions: "If you find that ordinary care on the part of Mr. Ramsdell after he knew the Varick car was skidding into a place of danger would, and like care on the part of Mr. Smith at that time would not, have prevented the accident, you will return verdicts in favor of . . . Annie Skibnoski, . . . the John B. Varick Co. and James H. Smith."

The evidence as to the speed of the respective cars is highly conflicting. There is no question, however, but that the highway was covered with ice and that it was exceedingly slippery.

The excepting parties call attention to the following evidence as most favorable to their contention. Smith, traveling at 18 or 20 miles

an hour, first saw the sedan approaching when he had reached a sign post on the right side of the road at the top of a small hill. The sedan was then opposite an apple tree about 550 feet distant from the point of collision. Shortly afterward the rear of the coupé began to swing toward the center of the highway and after going about 75 feet "turned and just slowly slid across the road" diagonally, a distance of about 20 feet. Smith testified that when the front wheels of the coupé came over on the west half of the road the sedan was about 200 feet away and approaching at a speed of about 40 miles an hour.

Miss Skibnoski did not see Ramsdell until the coupé had skidded 75 feet and was swerving to the left. She estimated that he was then 550 feet distant. She declared, however, that it was only a little more than a second from the time the coupé "first started to skid down to the time the accident happened."

A witness who talked with Ramsdell at the hospital stated that "he said that fully 200 feet ahead of him he saw that there was going to be an accident and he threw his right arm up over his head to protect himself against head injury and let the car go at that."

A garage man who was summoned to the scene of the accident found the sedan on the west side of the road and the coupé "crossways" in front of it.

No claim is made (or could fairly be made in view of the resulting damage) that both cars at the moment of impact were moving as slowly as their respective drivers state. Ramsdell testified that he was driving very slowly and that Smith was driving very fast; that he had no reason to anticipate an accident until within 60 or 70 feet of Smith's car; that at that point the coupé began to "waver a little" and almost immediately "whipped across" to his side of the road, giving him no time to think or to act.

It is reasonable to conclude that the jury accepted this statement in essential particulars, since under the charge as given they must have found that Ramsdell was in the exercise of due care. Assuming, however, that Smith's account of the accident is the correct one, it does not follow that the cases should have been submitted to the jury under the doctrine of the last clear chance.

There is absolutely no evidence, either direct or circumstantial, that Ramsdell after he saw the coupé "skidding into a place of danger" could have stopped his car or taken any other preventive action effectually. In view of the ice, which Smith characterized as "just like a mirror" and which extended the entire length of the highway from Manchester to Derry, no witness presumed to predict what

consequences would have ensued if Ramsdell had suddenly applied his brakes while driving at the speed of 40 miles an hour. When leaving Manchester at 10 miles an hour he was obliged to allow 100 feet "or better" for intersection stops.

His car was not equipped with chains. Smith, having "experimented with the chains" early that morning, found that "they slipped a good deal and then took them off." Whether Ramsdell's failure to use chains was prudent or otherwise does not matter. The last chance rule has reference only to the existing situation and the means immediately at hand. *Johnson* v. *Director-General*, 81 N. H. 289, 292.

The coupé was out of control and Ramsdell could only guess the direction it was likely to take. *Miller* v. *Daniels, ante*, 193, 196. It might swing back to the east side of the road instantly. His chance to avoid a collision by turning to the left was anything but a clear one. Moreover, if we assume that Miss Skibnoski's estimate of time is accurate, he had no opportunity for anything but instinctive action, and such action "cannot be said to be careless unless the actor is shown to be unfit to act" in such an emergency. *Collette* v. *Railroad*, 83 N. H. 210, 217; *Miller* v. *Daniels, supra*.

"The last chance must be a clear one, reasonably found to be fairly given." *Morrison* v. *Railroad, ante*, 176, 180. " . . . the doctrine means precisely what its judicial designation implies—that there must be a *clear opportunity* to avoid the accident by the exercise of ordinary care, and where there is no such opportunity present in a case, then the doctrine obviously does not apply." *Lawrence* v. *Goodwill*, 44 Cal. App. 440, 450. To the same effect, see *Frowd* v. *Marchbank*, 154 Wash. 634, 639, 640.

The remaining exceptions are apparently waived.

*Judgments on the verdicts.*

All concurred.