Hillsborough, }
Dec. 7, 1937. }

DORIS LOUGHLIN, *Ex'x*

*v.*

WESLEY A. JOHNSON *& a.*

*Sullivan & Sullivan (Mr. Thomas E. Dolan* orally), for the plaintiff.

*Murchie, Murchie & Blandin (Mr. Alexander Murchie* orally), for the defendants.

BRANCH, J.   An examination of the record indicates that defendants' motions for directed verdicts should be first considered.

The accident happened in Tyngsboro, Massachusetts, upon September 17, 1933, when the defendant's automobile was in collision with another car driven by one Pasciak. The defendants' evidence tended to show that at the time of the accident Pasciak was under the influence of liquor. No evidence to the contrary was introduced by the plaintiff and the case has been argued in this court upon the assumption that such was the fact. Mrs. McAuliffe, the deceased, had for many years been a friend of the Johnson family and the sole object of the journey in question, which was undertaken at her request, was to enable her to visit her sister in Somerville, Massachusetts. At the time of the collision the defendant, Harold, was driving and the defendant, Wesley, his father, was sitting on the front seat beside him. The deceased and Mrs. Wesley Johnson occupied the rear seat of the car. The accident occurred upon a straight road in a country district, nearly opposite a residence referred to in the testimony as the Pelletier house. The macadam surface of the road at the point of accident was 24 feet wide. There was a slight up grade to the south, the direction in which the Johnson car was proceeding.

The plaintiff undertook to prove her case almost entirely by the testimony of the defendants.

From the uncontroverted evidence the following facts appear.

The defendant, Harold, first saw the other car when it rounded a slight curve which was findably 900 feet distant. At that time it swung over to the west side of the road onto the gravel shoulder and in that position continued its course toward the north at reduced speed. The defendant, Wesley, also saw this movement of the approaching car and both defendants inferred that it was going to stop in front of the Pelletier house. They had frequently seen cars come to a stop on the left side of country roads and neither of them apprehended any unusual danger from the movement of the car. The Johnson car, therefore, proceeded on its course at a speed of 25 miles per hour. The other car did not stop at the Pelletier house, and when it was about 50 feet distant, the defendant, Harold, turned his car gradually toward the left to a position about in the center of the road, so that its left wheels were east of the center. When Harold last saw the other car it was passing him on his right at a speed which he estimated to be 10 or 15 miles per hour, and was still partly off the macadam. After the front ends of the two cars had passed each other, the Pasciak car passed out of Harold's line of vision and he did not observe it again until after the collision. According to the testimony of the defendant, Wesley, however, it turned sharply to its

right, increased its speed and struck the side of the Johnson car with such force that it was driven backwards across the road into the bank on the east side thereof.

The case was tried under the law of Massachusetts and the jury was instructed without exception by either side, that there could be a verdict for conscious suffering only upon proof of gross negligence, but that a finding of ordinary negligence would support a verdict for damages resulting in death of the decedent. The decisive question raised by the motions of the defendants is therefore whether there was evidence to support a finding of ordinary negligence.

From the foregoing recital it is plain that the immediate cause of the accident was the drunken driving of Pasciak, particularly his sudden turn to the right when opposite the Johnson car. Harold Johnson being ignorant of his condition had no reason to apprehend such conduct on his part. It could not, therefore, be found that he was negligent in failing to take precautions against such unexpectable conduct on the part of the other driver (*Flynn* v. *Gordon*, 86 N. H. 198, 201; *Palsgraf* v. *Railroad*, 248 N. Y. 339), and unless he was otherwise negligent in creating the situation which made the collision possible he cannot be charged with responsibility for the accident.

The plaintiff suggests a number of grounds upon which it is argued that Harold Johnson might have been found to be negligent as follows: (1) because he did not stop before the accident occurred, (2) because he did not blow his horn, (3) because his speed was illegal and excessive, (4) because he did not turn further to the left before the collision, (5) because he did not continue to observe the course of the other car after the front ends of the two machines had passed each other. The evidence furnishes no support to any of these claims.

The answer to the claim that Harold Johnson should have stopped his car after he saw the Pasciak car on the west side of the road is to be found in the principle that "the risk reasonably to be perceived defines the duty to be obeyed." *Palsgraf* v. *Railroad*, 248 N. Y. 339. There is nothing in the evidence to indicate that in the situation then presented to him there was any risk perceived or "reasonably to be perceived" by him which called for such radical action on his part. On the contrary, both defendants testified that they had frequently seen cars come to a stop on the left side of country roads and neither of them apprehended any unusual danger from the movement of the other car.

Similar considerations furnish the answer to the claim that Harold

ought to have blown his horn. It is a matter of common knowledge that when two motor vehicles approach each other on a straight road in the day time, the sense of sight ordinarily furnishes all the information necessary to enable the drivers to pass in safety and that, in the absence of some clear indication that the driver of one car is inattentive or oblivious to the presence of the other, the use of the horn by one driver to announce his approach to the other is extremely rare. As before stated, there is nothing in the evidence to charge the driver of the Johnson car with knowledge that Pasciak was drunk or oblivious to his surroundings, and under these circumstances there is no basis in the evidence for a possible finding that he was negligent in failing to sound his horn.

The claim that the speed of the Johnson car was excessive is based upon the provision of the Massachusetts statute which provides that "It shall be *prima facie* evidence of a rate of speed greater than is reasonable and proper. . . if a motor vehicle is operated on any way outside of a thickly settled or business district at a rate of speed exceeding thirty miles per hour for the distance of a quarter of a mile." Mass. Gen. Laws, 1932, *c*. 90. *s*. 17. One answer to this argument is that the evidence would not sustain a finding that the speed of the Johnson car exceeded thirty miles per hour at any point within the last quarter of a mile which it traversed before the accident. Furthermore, there is not the slightest basis in the evidence for the suggestion that the speed of the Johnson car, whatever it may have been, in any way interfered with its safe operation or that the accident would have been averted if its speed had been less.

The answer to the claim that Harold Johnson ought to have turned further than he did to the left before the collision, has already been indicated. Since due care "requires the protection of another only against perceivable or expectable risks of injury, it follows that the actor is liable only for such harm as results from the other's exposure thereto." *Flynn* v. *Gordon, supra.* The evidence is clear that when Harold Johnson turned to the left about fifty feet before reaching the point of collision, the only "perceivable or expectable risk" disclosed by the circumstances within his observation was, in its nature, the ordinary risk of meeting and passing another car on the road. This called for such action on his part as would leave sufficient space for the other car to pass in safety. The mere fact that the other car was to pass to his right rather than to his left, did not appreciably change the character of this obligation, and there is no evidence to indicate that it was not fully performed. Both Harold Johnson and

his father testified that when the front ends of the two cars passed there was ample room for the Pasciak car to have continued on its course. The distance between the two cars was described as "several feet." "Ordinarily a driver will not be regarded as negligent in failing to turn out further when there is already sufficient space to allow an automobilist to pass in safety." 3 Huddy, Enc. Automobile Law, s. 117; *Savoy* v. *McLeod*, 111 Me. 234; *Loehr* v. *Crocker*, 191 Wis. 422, 425. Even if the testimony of the defendants were disbelieved, it would not justify a contrary finding that the space available for passing was insufficient, and under these circumstances a finding that Harold Johnson was negligent in failing to drive further to the left could not be sustained.

Plaintiff's final contention that Harold Johnson was negligent because he did not observe the course of the Pasciak car after it passed the front end of his car, comes to nothing because the collision occurred so quickly after that moment that there was no time for saving action if he had continued to watch the operation of the other car.

Since none of the plaintiff's theories of negligence are sustained by the evidence, the defendants' motions for directed verdicts should have been granted. As a result of this conclusion it becomes unnecessary to consider the plaintiff's exceptions.

*Judgments for the defendants.*

All concurred.