### GRAY et al. v. DIECKMANN et al.
### No. 3489.

Circuit Court of Appeals, First Circuit.

Feb. 9, 1940.

Maurice F. Devine, of Manchester, N. H. (John E. Tobin and Devine & Tobin, all of Manchester, N. H., on the brief), for appellants.

Carl C. Jones, of Concord, N. H. (Demond, Sulloway, Piper & Jones, of Concord, N. H., on the brief), for appellees.

Before WILSON and MAGRUDER, Circuit Judges, and FORD, District Judge.

WILSON, Circuit Judge.

These three actions were brought by the plaintiffs, Florence E. Dieckmann, Anne Dieckmann and William Dieckmann, all residents of Scarsdale in the State of New York, to recover damages for personal injuries incurred on May 14, 1938, and caused by a collision between two automobiles on a highway in the town of Holderness in the State of New Hampshire, the ad damnum in each case being at least $10,-000. The jury found for each of the plaintiffs and also for the defendant, Mrs. May Piper, and against the defendants, Ralph E. Gray and the Country Properties, Inc.

The facts as to how the accident occurred are not really in dispute, or as to the relationship of the plaintiffs. The plaintiffs, Florence E. Dieckmann, a daughter of Anne Dieckmann and William Dieckmann, had come to New Hampshire to look for summer properties which they might be interested in buying and occupying. They were accompanied by Arthur Haufner, a chauffeur, and another friend, and at the time of the collision were riding in a Packard touring car, owned and driven by defendant Gray, and were going in a northerly direction.

Mrs. Piper was driving in a southerly direction in a Chevrolet coupe and on the right hand side of the same highway. As she approached the driveway leading to her home, which was on the easterly and opposite side of the highway, she stopped her car on the extreme right and looked northerly and southerly along the highway. At this point there was a view northerly and southerly along the road of from 200 to 800 feet. She saw no one coming in either direction, though she admitted that her vision was defective. She then started to make what she termed was a "rounding curve" to the easterly side of the road to enter her driveway. Just as the front wheels of her car reached the middle of the road, the car driven by Gray, in which the plaintiffs were riding, hit the front end of her car a glancing blow, damaging it very little, but without injuring Mrs. Piper. The Gray car, however, after striking the Piper car, skidded and continued on down the road for a distance of 58 feet, turned over and then continued on a distance of approximately 35 feet, and was finally found upright on its wheels a distance of 93 feet and 10 inches from the Piper car.

The road at this point was 21 feet wide and there were level dirt shoulders on each side of considerable width.

The evidence disclosed that the Gray car was travelling rapidly, estimated by several witnesses at 45 to 50 miles per hour at the time of the accident. Mrs. Piper, after starting up to cross the road into her driveway, stated she was not going more than 5 miles per hour. Her failure to observe the oncoming Gray car before it collided with hers must have been due, in part, at least, to her defective vision; but the jury must have found that Gray's failure to observe her making the turn to enter her driveway could only be accounted for by his turning his head to look at some camps 100 to 200 feet northerly of the point of collision to which his attention was called by the conversation of his passengers, and,

when he turned again to look ahead, he was within 25 to 30 feet of the Piper car and too close to avoid a collision.

He thought first to avoid a collision by stopping, but concluding it was too late to stop, he attempted to go to the right in front of Mrs. Piper's car, but was unable to avoid colliding with the front end of her car. The jury must have found that, if it was a situation in which the defendant Gray, according to his own testimony, in attempting to avoid colliding with the Piper car, acted in an emergency, it was of his own creation by the negligent manner in which he operated his car; and since he created the emergency, the jury evidently found, under the instructions of the court, that he was liable for the injuries to the plaintiffs, unless they or either of them were guilty of contributory negligence. As there was no verdict against Mrs. Piper, her case is not before this court for consideration, unless in some way it affects the issue of liability of the other defendants.

This conclusion leaves only the exceptions, which the defendants' counsel reserved at the trial as grounds for reversing the verdict or awarding a new trial on appeal.

In accordance with Rule 75 of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c, the defendants' counsel filed a statement of 17 points on which they intended to rely on appeal. In their brief before this court, however, counsel for Gray and the Country Properties, Inc., stated. that, in order to clarify the record, they wished to waive all the points so reserved except points Nos. 4, 7, 15 and 17, which relate to damages, and that they also wished to waive point No. 9 in part, in that they did not wish to argue the refusal of the court to give appellants' request for instructions 6 and 9, of which 6 merely presented the question of whether there was more than one avenue of escape for the defendant, but he failed to choose the right one in case of an emergency facing him, though not of his own creation, and does not appear to have any application here. No negligence is attributed to the operator of the car, if he acted reasonably under all the circumstances; and as to 9, no complaint being made of the speed at which he was driving by the passengers, he was not negligent as to them in the operation of the car.

The defendant under point 9 also reserved the right to argue the refusal of the court to give requests for instructions 8 and 12; but no error appears in the failure to give these instructions.

It is not easy to follow the references to the several points not waived, as the same numbers designating separate points are sometimes repeated in the record, and before taking up the remaining points reserved seriatim, it may be in the interest of clarity to state generally the situation out of which the accident arose.

Exceptions were reserved under point No. 10 to the failure of the court to distinguish fully between due care required in a situation of emergency and one involving instinctive action. This difference was explained in the judge's charge and its bearing on the defendants' negligence as follows:

"There is another principle of law which has been called to the attention of the court in argument, and that is the law respecting emergencies. It is true that a person acting in an emergency is not expected to use the same care that a person would exercise if he has time to act intelligently and not instinctively. If a person is put in a position where he has to act instinctively, you cannot expect always the same degree of thought that would be required if he had time to act otherwise than instinctively; so with reference to the driver, defendant Gray, if he finds himself in an emergency which was not created by his own careless conduct as the jury may find, then the fact that he did not act as a thoughtful man, as a careful man would act under the same circumstances, does not constitute negligence, but if any of his negligence, his own lack of care got him into that situation, then the principle of an emergency does not apply to the situation."

While the evidence may indicate that the defendant Gray did not act instinctively upon finding himself and his passengers in a position of danger, he chose a course that resulted in the accident when possibly some other course might have avoided the accident. In any event, he was responsible for getting into an emergency and he can not escape the consequences.

The jury might well have found that Gray was negligent in driving so fast in view of Mrs. Piper's approach and his uncertainty as to the reason for her slow approach. They might well have found that at the point of collision he was driving 45 to 50 miles an hour, and that just prior to the collision he stepped on his accelerator in order to pass in front of her car. We cannot say that there was no evidence in

the case on which the jury could base a finding that the Gray car was coming toward the coupe 200 to 300 feet southerly of the Piper driveway at approximately 50 miles per hour. Some distance southerly of this point Mr. Dieckmann asked his daughter, who was riding on the front seat beside Gray, how fast they were going. She looked at the speedometer and replied, 50 miles, meaning 50 miles an hour. She was herself used to driving a car, but as she was looking at a road map in her lap and at places along the road in which she was interested as a possible purchaser, she testified she did not notice any slackening of speed up to the time of the collision, and could not estimate the speed of the Gray car at the time of the collision as her attention was otherwise engaged.

The chauffeur, Haufner, who had driven them to New Hampshire, from Scarsdale, estimated the speed just prior to the collision at 50 miles per hour, and Mrs. Piper, who saw them coming down the road, estimated the same rate of speed at which the Gray car was coming.

As stated above, Mrs. Piper was coming so slowly on her side of the road going north, that Gray, when he first caught sight of her car some distance away, thought the driver must be someone learning to drive, and the jury could well have found from the evidence that she stopped her car on the side of the road opposite her driveway and looked both north and south for oncoming traffic. There is no evidence in the case that she was or was not accustomed to stop at this point when travelling in a southerly direction, and looking north and south before making the turn into her driveway. She either did not clearly see the Gray car coming, or, owing to defective vision, could not fairly estimate its speed, and started up to make a "round turn" into her driveway. She estimated her speed in crossing the road at not over 5 miles per hour. There was no reason to think that in starting up to cross the highway after stopping she exceeded that speed. At least the jury found that Mrs. Piper, under the circumstances, was not negligent in her manner of crossing the highway and in approaching her driveway.

She, as well as Gray, had a right to assume that others using the highway would also use due care in so doing, and that Gray would not drive at this point in excess of the limit fixed by the state, to wit: 45 miles per hour; and since she was in plain sight of any car coming from the north, that Gray, the driver of the oncoming car, would slacken speed and that she could cross the road in safety. Having started to make the turn in plain view of the driver of the Gray car and while it was some distance away the jury must have found it was not necessarily negligence to fail to give notice to any car coming in the opposite direction of her intent to cross the highway to enter her driveway. Loughlin v. Johnson, 89 N.H. 191, 195 A. 685, 687. Gray having seen her approaching at some distance, the jury must have found that her purpose to enter her driveway would have become apparent to Gray in time for him to slow down and permit her to pass in front of him, if his attention had not been on the cabins they were passing and he had been watching the road ahead and had been in the exercise of due care. Before he had again turned to watch the road ahead, it was too late to avoid the collision. True, he had a right to assume that his right hand lane would be open to him, but her driveway was in plain view. She had stopped opposite it and had an equal right with Gray to use the easterly right hand lane in crossing the highway to enter, each having due regard for the rights of the other.

"The argument seems to be that, because of this [the] statute, the rights of the traveler who purposes to continue along on the right-hand side are superior in law to those of the one proposing to turn to his left and go off that road; and that the through traveler has, because of the statute, a right to assume that the other is also going straight on. Neither position can be sustained." L'Esperance v. Sherburne, 85 N. H. 103, 105, 155 A. 203, 205.

There is no evidence that Mrs. Piper was not accustomed to make the same turn to enter her driveway whenever coming from the north, or that she did not frequently travel on this road from north to south; or that she did not use due care on this occasion by stopping on the other side of the road and looking north and south before attempting to cross the highway and enter her driveway. At least, the jury absolved her from negligence in this instance.

True, none of the passengers in the Gray car protested against the speed at which it was being driven, but to require a passenger to protest against the speed at which a car is driven, or the manner of the driving of a car in which the passen-

ger may be riding, the passenger must see and appreciate the danger resulting from the manner in which the car is being driven in order to be held guilty of contributory negligence, if the attention of the driver of the car is not called to the danger.

"We find in these cases no suggestion that a passenger must be constantly on the alert to discover unanticipated but possible danger, or that he must at all times be prepared to guard against a possible lapse from the standard of due care on the part of his driver. On the contrary, the net effect of the foregoing cases is that a passenger must conduct himself with reasonable care in the presence of dangers about which he knows or should know." Salvas v. Cantin, 85 N. H. 489, 493, 160 A. 727, 730.

"There is no rule of law requiring a passenger, in the absence of knowledge on his part of unsuitability in his driver, to keep a lookout for peril ahead. He is entitled to rely upon the assumption that his driver will act with due regard for his safety, in the absence of knowledge that such is not in fact the case. Hoen v. Haines, supra; [85 N.H. 36, 154 A. 129]; Salvas v. Cantin, 85 N.H. 489, 160 A. 727. That he was engaged in pulling down the rear curtain at the time he was injured, and in consequence was not keeping any lookout ahead, indicates no negligence on his part." Mason v. Andrews, 86 N.H. 277, 279, 167 A. 156, 158.

The jury found that neither Miss Dieckmann, nor the other plaintiffs, passengers in the Gray car, were barred from recovery because of any failure to protest against the speed at which Gray drove his car at the time of the collision. The jury, however, was correctly instructed on this point, if the point was not waived.

Throughout the charge the judge carefully instructed the jury that the standard of care governing the conduct of these parties under all the circumstances was the care a reasonable man should use under similar circumstances, familiarly termed in law, "due care"; that this standard was controlling throughout the case; and that this question was for the jury to determine in every instance whenever the question arose.

■ On the issue of proving contributory negligence the judge also instructed the jury, in accordance with the law in New Hampshire, that the burden of proving that the plaintiffs were guilty of con-

tributory negligence was on the defendants and required the same degree of proof in the one case as in the other; that is, one must be satisfied by a fair preponderance of the evidence in such instances that the plaintiffs were negligent, that such negligence contributed to their injuries, and that such negligence would bar their recovery in the case. No further instructions were required on the bearing on contributory negligence in the case.

This was in accordance with the statutory rule in New Hampshire and the decisions of the highest court in the state; P. L. Chap. 328, Sec. 13; Moulton v. Langley, 82 N.H. 555, 130 A. 740; Burelle v. Pienkofski, 84 N.H. 200, 148 A. 24; Precourt v. Driscoll, 85 N.H. 280, 157 A. 525, 78 A.L.R. 874; Kelley v. Lee, 89 N.H. 100, 193 A. 228; Bullard v. McCarthy, 89 N. H. 158, 195 A. 355; and in accordance with the rule laid down in Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487.

Points Nos. 4, 15 and 17 relate to the admission of the testimony of Florence E. Dieckmann as to her payment for labor at their home in Scarsdale, and the further evidence of Florence and her mother, Anne Dieckmann, as to the amount paid for labor to do the work formerly done by William Dieckmann about the house, and the amount paid the women called in to do the housework formerly done by Mrs. Dieckmann, and which they were incapacitated from doing in the future due to the negligence of defendant Gray.

It appears from the evidence that the house in which they lived in Scarsdale belonged to William Dieckmann. Anne Dieckmann, his wife and the mother of the two daughters, who, prior to her injuries, though she was a woman nearly 70 years old, did all the housework; that the daughters and two granddaughters lived with the grandmother and grandfather and worked outside for wages. The jury might well have found that the daughters and granddaughters, either by work or in money, paid for their board and rooms, as by implication they were obliged to do, which supplied the old people with any cash they needed to run the house.

The court instructed the jury that William Dieckmann was entitled to recover for his loss of earning capacity which he formerly had; also to recover the value of the services performed by his wife in taking care of his house, and her care and

companionship; and after the injuries to his wife the expense of someone to come in and do the work that she was previously accustomed to do.

Owing to the fact that William Dieckmann after his injuries was taken care of at his home by his daughters, and that someone was hired to do the chores about the house which he was accustomed to do though a financial adjustment of this burden may not have been made at the time of the trial, the defendants contended that there was no financial loss to him by reason of his inability to earn which can be attributed to this accident. It is clear from the testimony that he had a certain earning power prior to the accident, which is now gone, due to his injuries. Federman v. Stamford, 118 Conn. 427, 172 A. 853, 854; Piper v. Adams Express Co., 270 Pa. 54, 113 A. 562.

In Miller v. Delaware River Trans. Co., 85 N.J.L. 700, 90 A. 288, 290, Ann.Cas.1916C, 165, the court made the following clear statement of the rule:

"The [lower] court charged the jury that the plaintiff was entitled to damages for any disability that he had sustained. This was a correct statement of the legal rule. The appellant's assumption is that New Jersey Express Co. v. Nichols, 33 N.J.L. 434, 97 Am.Dec. 722, holds that, unless some proof is made of the plaintiff's income or of his earning capacity, nothing can be awarded on that account. This is a false conception of what was decided by the court. * * * where there is a clear disability, the jury may undoubtedly award what in their best judgment, as reasonable men, should be awarded, irrespective of whether any definite income is proved or not. The evidence, * * * is 'to guide them in the exercise of that discretion which, to a certain extent, is always vested in the jury.'"

He has also lost the earning power of his wife, which was his prior to the accident, as well as her consortium to which he is entitled.

On the issue of the damages which these three people suffered, the jury having found that Gray was negligent in the operation of his automobile, the court instructed the jury as follows:

"Mr. Dieckmann, who is the head of the family, is entitled to fair and just compensation for physical injuries, loss of capacity to perform his labors, for all pain and suffering which he has suffered in the past and which he will be likely to suffer in the future. He is also entitled to fair compensation for such medical assistance as he has had, including hospital bills and other charges of physicians and doctors. He being the head of the family, he is also entitled to recovery for loss of the services of his wife and for medical assistance and hospital care that is charged against him as head of the family for her care. That does not include bills which have been voluntarily paid by the daughter or any other member of the family voluntarily without any contract on their part for reimbursement. He is entitled to loss of earning capacity, as I have said, and you heard the evidence as to what earning capacity he had; that is, he had retired from business. He had been retired for some years. Of course, any loss of earning capacity for business cannot be included in your verdict, but he did have some capacity in taking care of the furnace and lawn and doing other chores around the house and if he is not able to perform such services in the future that is his earning capacity, according to the value of such services where they lived, the reasonable expenses, and the same is true with reference to the wife. You will, of course, take into consideration with reference to the loss of earning capacity, physical injuries the age of Mr. Dieckmann. He was a man of 77 years of age at the time of accident. Of course, the fact that he had retired from business you will take into consideration, also the fact that his wife was 70 years of age, and you know what the evidence disclosed as to the duties she performed around the house and you may consider whether or not she would be able to continue to perform those duties; but you are not to take into consideration in assessing your damages any evidence that has been disclosed as to the employment of someone to perform her duties except as a temporary yardstick by which you may measure the loss of her services. That, of course, would be assessed against the head of the family and not damages suffered by her. The parties are entitled to fair and just compensation, as I say, for pain and suffering, physical injuries, the limit of the earning capacity, and for medical bills and hospital bills. Fair and just compensation is the rule; that and nothing more."

This was a substantially accurate statement of the damages to which William Dieckmann was entitled to recover as

head of his family. We think there was no error in permitting him to recover damages measured by his earning capacity before the injuries in the wise discretion of the jury. He has been deprived of this capacity to earn by the negligence of the defendant Gray. While his daughter may have contributed temporarily to relieve him of the loss, it does not follow that he may not be dependent upon it in the future and upon the earnings of his wife, her services, care and companionship. The exceptions to these instructions must be overruled.

The sum of $15 as the amount the family is now obliged to pay to have the work done which the father was accustomed to do before his injuries, was admitted not to show an amount he was entitled to receive as damages, or the sum of $12 which the daughters were obliged to pay a woman to come in and do the housework his wife formerly did, or that he was entitled to recover that sum for the value of his wife's services about the house, but rather as a "yardstick" for the jury to use in awarding damages for the loss to William Dieckmann. It is the capacity to earn that is to be measured.

A judge in instructing a jury at nisi prius can not be held up to the exactitude of legal expression. He must apply his instructions to a jury with a broad brush. If his instructions are substantially correct and contain no misleading errors, it is sufficient.

Exceptions not waived are overruled in each case.

In each case:

The judgment of the District Court is affirmed, with costs of this court.