### WHICHER v. PHINNEY et al.
### No. 3699.

Circuit Court of Appeals, First Circuit.

Jan. 13, 1942.

930

Laurence I. Duncan, of Concord, N. H. (John H. Sanders, Robert W. Upton, and George P. Cofran, all of Concord, N. H., on the brief), for appellant.

Alexander Murchie, of Concord, N. H: (Murchie & Murchie, of Concord, N. H., on the brief), for appellee Phinney.

Winthrop Wadleigh, of Manchester, N. H. (Wyman, Starr, Booth, Wadleigh & Langdell, of Manchester, N. H., on the brief), for appellee Postage Meter Co.

Before MAGRUDER, MAHONEY, and WOODBURY, JJ.

WOODBURY, Circuit Judge.

This is an appeal by the plaintiff from judgments entered for the defendants upon verdicts returned for them by a jury, (the verdict for the defendant Postage Meter Company was by direction and order of the court), in an action brought under Public Laws of New Hampshire, 1926, c. 302, §§ 11–14 for negligently causing the death of the plaintiff's intestate.

Jurisdiction is based upon diversity of citizenship and an amount in controversy, exclusive of interest and costs, in excess of $3,000.

The decedent died as a result of injuries received when he was run over by an automobile operated by the defendant Phinney who at the time was acting within the scope of his employment by the defendant Postage Meter Company. The accident happened in the following way. About dusk, that is between sunset and complete darkness, on the evening of October 11, 1938, the decedent and one Braley were riding on a two-horse lumber wagon in a generally north easterly direction along U. S. Route 3, called the Daniel Webster Highway, toward Concord, New Hampshire. The platform body of their vehicle had been removed, and the decedent sat facing forward on boards nailed across the reaches just in front of the rear axle. Braley, who drove, sat on boards similarly nailed across the forward ends of the reaches.

At a point on the highway about two miles from the business district of Concord an automobile operated by one Humphrey approached them from the rear. Apparently Humphrey did not see the horse-drawn vehicle until too late to avoid striking it, because, although just before impact he swung sharply to his left, the right side of his car collided with the left rear wheel of the wagon. Humphrey then drove on by without further contact with either the vehicle, its occupants, or the team. The force of the collision, however, threw the decedent forward and to his left behind the Humphrey car, and while he lay in the road beside the vehicle upon which he had been riding he

was run over by the Phinney car which was following in Humphrey's wake.

At the trial in the District Court the defendant Phinney, who for convenience will be referred to hereafter simply as the defendant, seasonably moved for a directed verdict on the ground, among others, that "There is no evidence from which it can be found that (he) negligently or carelessly ran into or over the decedent Whicher". This motion was denied and he excepted. Before us, "Invoking the familiar rule that the successful party below is entitled, on appeal by the other party, to urge in support of the judgment or decree as rendered any legal grounds appearing in the record" (Cochran v. M & M Transportation Co., 1 Cir., 110 F.2d 519, 520), he argues that from the evidence "no conclusion can be drawn other than when (he) became aware of the danger he had no time for anything but instinctive action", and therefore that the judgment in his favor should stand under the rule that "Instinctive action, when there is no time at all to think and choose, cannot be said to be careless, unless the actor is shown to be unfit to act in an emergency calling for such action". Collette v. Boston & M. Railroad, 83 N.H. 210, 217, 140 A. 176, 181.

■ Turning to the record we find that this contention, as stated, is sustained. There is nothing in the record to indicate that the defendant was in any way unfit to act in an emergency, and it appears that the first notice which he received, or could have received, that there was trouble ahead was when the Humphrey car swung sharply to its left disclosing the horse-drawn vehicle ahead. That car was then within ten feet of the rear of the wagon, and the defendant's car, travelling between thirty and thirty-five miles per hour, was between fifty and sixty feet behind Humphrey. Simple calculations based upon these data indicate that the defendant had at the most not over two seconds in which to act after he became aware of the danger. The New Hampshire cases establish that in such a short interval of time there is opportunity only for instinctive action, and that such action, without proof of unfitness to act in an emergency, does not provide a basis for a finding of negligence. See Miller v. Daniels, 86 N.H. 193, 196, 166 A. 30; Ramsdell v. John B. Varick Company, 86 N.H. 457, 462, 170 A. 12; Praded v. Magown, 88 N.H. 405, 408, 190 A. 287; Kardasinski v. Koford, 88 N.H. 444, 446, 190 A. 702, 111 A.L.R. 1017; Morin v. Morin, 89 N.H. 206, 208, 209, 195 A. 665.

■ But this is not the end of the case as the defendant seems to assume. Since "this quality of instinctive action inheres in the emergency doctrine" (Kardasinski v. Koford, supra [88 N.H. 444, 190 A. 703, 111 A.L.R. 1017]), and since the emergency doctrine cannot be invoked by one who himself negligently caused the emergency to exist (Cutler v. Young, 90 N.H. 203, 206, 6 A.2d 162), we must examine the record to see whether or not the defendant could be found to have been negligent in placing himself in such a position that when he first became aware of danger he had time only to act instinctively.

It appears that the defendant came up behind Humphrey a little less than a mile from the scene of the accident. From that point on he made no attempt to pass but instead reduced his speed to Humphrey's and followed fifty or sixty feet behind him. Both cars proceeded at a speed of thirty to thirty-five miles per hour. The highway over which the defendant drove in the way just described is straight and approximately level except that about five hundred feet east of the place where the accident occurred it begins to slope gradually down grade. A civil engineer testified that the paved portion of the highway near the scene of the accident was between thirty-three and thirty-four feet wide. He described it as "a hard surface black top road with what I would call a fairly high crown. The edges of it are somewhat irregular but in general they are straight and on either side of the road is a shallow gutter."

The section of the highway under discussion runs through sparsely wooded country. Some houses and other buildings border it at irregular intervals, but none of them is set close together. There are no intersecting highways, the only intersection in the vicinity being at approximately the point where the accident occurred.

■ Clearly reasonable men might find from the facts outlined above that the defendant might have used greater care than he did, but that is not the question. In cases of this sort the question is whether or not such men could find that the defendant, in acting as he did, used as much

care as the ordinary man of average prudence would have used under the circumstances. Racette v. Sunlight Baking Company, 85 N.H. 171, 155 A. 254.

■ The defendant had the right to suppose that traffic would move as it had a right to, that is, in a reasonable way (Rouleau v. Blotner, 84 N.H. 539, 152 A. 916), and although he was not entitled to assume that the conduct of other users of the highway would be perfect (Himmel v. Finkelstein, 90 N.H. 78, 4 A.2d 657), it was not negligent for him to assume, there being nothing to indicate the contrary, that others would do their duty and drive with due care. Piateck v. Swindell, 84 N.H. 402, 151 A. 262; Jackson v. Smart, 90 N.H. 153, 5 A.2d 713. It was his duty to drive in such a way that he would have time to cope with any danger "likely to be encountered" but "he is not to be held careless because he did not look out for dangers he had no occasion to anticipate." Piateck v. Swindell, supra; see, also, Loughlin v. Johnson, 89 N.H. 191, 193, 195 A. 685. The question then is whether or not reasonable men could find on the testimony in the record that the defendant, as he approached the scene of the accident, ought as a reasonable man to have anticipated that something might occur ahead so suddenly that he would have time only for instinctive action and so that he should have left a greater interval between his car and Humphrey's. We think this question should be answered in the negative.

To say that situations calling for instant action may confront any automobile driver at any time is to state the obvious, but it does not follow that due care requires every automobile driver to drive in the constant expectation that such a situation is likely to arise. Ordinary men of average prudence do not so drive. For instance, there is far greater likelihood for a call for immediate action when driving on a busy city street on a rainy evening than there is when driving in broad daylight over a straight highway traversing flat, open, uninhabited country.

■ Clearly the defendant as he approached the scene of the accident ought to have driven in the expectation that Humphrey might slow down, turn out around some slow moving vehicle or pedestrian, turn off the highway, or even come to an ordinary stop, any of which manoeuvers he could have met with considered action, but we do not think due care required him to drive in anticipation that some person or animal would dash out in front of him or Humphrey or that Humphrey would fail to see an obstruction in the highway ahead and, instead of avoiding it, run into it. In short, in view of the nature of the highway and the character of the country through which it ran, in view of the clear weather and good visibility, in spite of the time of day when the accident occurred, and in view of the apparent care with which Humphrey was driving, we fail to see how reasonable men could find that the defendant failed in his legal duty by not driving in anticipation of the likelihood of the occurrence of an emergency so sudden that only instinctive action was possible.

The judgments of the District Court are affirmed, without costs.

MAGRUDER, Circuit Judge (concurring).

I agree that the trial judge should have directed a verdict for the defendant Phinney on the ground that there was no evidence from which it could be found that Phinney was guilty of negligence in running over the decedent. Therefore the judgment for the defendant Phinney must stand even if the trial judge committed errors, as alleged by appellant, in instructing the jury on issues relating to Phinney's liability. Further, if judgment should have been directed for the defendant Phinney, it necessarily follows that the trial judge committed no error in directing a verdict for Phinney's employer, the co-defendant Postage Meter Company. It therefore becomes unnecessary for us to consider the additional point raised by the Postage Meter Company in support of the directed verdict in its favor, namely, that even if Phinney were negligent, the Postage Meter Company could not be held liable on grounds of respondeat superior, because at the time of the accident Phinney was not acting as the company's servant in the course of his employment subject to the control of the company as to the management and operation of the motor vehicle. See McCarthy v. Souther, 83 N.H. 29, 35-38, 137 A. 445; Hutchins v. John Hancock Insurance Co., 89 N.H. 79, 192 A. 498.

The opinion of the court refers to various New Hampshire cases dealing with the special situation where an actor, without

previous fault on his part, is faced with a sudden emergency in which he has no time for anything other than "instinctive action." To me the form of statement of the emergency doctrine found in the New Hampshire cases is somewhat confusing, but upon closer examination I suspect that the rule in New Hampshire on this point is not substantially different from that generally laid down in other states.

The leading case in New Hampshire referring to "instinctive action" is Collette v. Boston & Maine R. R., 83 N.H. 210 at page 217, 140 A. 176, at page 181, where the court said:

"While the issue of care in an emergency is one of fact the same as in situations generally, yet the facts that the call for taking action is sudden, and that the excitement and lack of time to think naturally affect the normal action of judgment are to be given consideration as a matter of law. Carney v. [Concord St.] Railway, 72 N.H. 364, 372, 57 A. 218. And, when the action is taken so instantly that it is instinctive so that the action precedes thought, it cannot be said that any choice of action has been made. Instinctive action, when there is no time at all to think and choose, cannot be said to be careless, unless the actor is shown to be unfit to act in an emergency calling for such action. Carelessness means wrong thinking or failure to think in connection with action, and instinctive action, when there is no time to think, cannot of itself be called negligence. When instant and instinctive action to meet danger is called for, human limitations are such as to make the action taken, whatever it may be, the only care that can be given, aside from taking care that the actor be a careful person."

The foregoing is not the usual formulation of the emergency doctrine. See Am. L.Inst. Restatement of Torts, § 296, and comment c thereto.

The reference to "instinctive action" would seem to introduce a psychological subtlety inappropriate for submission to the jury. The precise meaning of "instinctive action" is difficult enough to define, but it presumably is accompanied by some form of mental activity. The organism apprehends danger and stimulates a muscular response to avert it. This is purposeful action, precipitated by a mental operation, though not on the plane of conscious deliberation. There is no good talking to the jury of behavior patterns, conditioned reflexes, instinctive action, and similar phrases. The point is that when one drives a car on a busy highway, he must be prepared to pay for damages caused to an innocent plaintiff, if his conduct fails to meet an objective standard of ordinary care and skill. This means that in situations of emergency, even where there may not be time for a conscious weighing of alternatives, the driver's behavior pattern, his responses, his skill, must be so educated as to be as good as that of a driver of ordinary competence acting under similar circumstances. No more refinement is practicable for a jury issue. The ordinary formulation of the emergency doctrine enables the jury to make reasonable allowance for the time element in judging the actor's conduct by the traditional standard. Of course, cases of sudden emergency may arise where on the evidence the trial judge should rule as a matter of law that the defendant's response or reaction to the crisis measured up to that of a driver of ordinary competence acting under similar circumstances. Such I believe to be the case here.

What makes me think that the New Hampshire rule in substance is not different from that in other states is the last sentence in the quotation above from the Collette case: "When instant and instinctive action to meet danger is called for, human limitations are such as to make the action taken, whatever it may be, the only care that can be given, *aside from taking care that the actor be a careful person.*" The only meaning I can read into the italicized clause is that the action taken, even though "instinctive," must measure up to that of an ordinary prudent man acting under similar circumstances. If I am correct in this, then it appears that the New Hampshire rule is really not different from the general rule as to conduct in an emergency, though the reference to "instinctive action" may be open to misconstruction. That confusion has in fact resulted was apparent to us in Gray v. Dieckmann, 1 Cir., 109 F.2d 382, 384, where the defendant, relying on the Collette case, urged that the jury should have been told that if the conditions confronting the defendant were such that he had time for instinctive action only, his conduct, whatever it might be, could not be found to be negligent. I do not think that the Collette case, and the cases following it, establish any such rule.