Hillsborough, }
Dec. 7, 1937. }

SIMONNE MORIN *v.* JULIEN MORIN.

*Doyle & Doyle* and *Irving E. Forbes* (*Mr. Paul J. Doyle* orally), for the plaintiff.

*Devine & Tobin* (*Mr. Tobin* orally), for the defendant.

PAGE, J. The defendant relies upon the emergency doctrine. The plaintiff was a passenger in a Dodge sedan truck driven by her brother, the defendant, and proceeding northerly, when the truck came into collision with a Chevrolet sedan driven by Joseph Martin in a southerly course. The time was between eleven and twelve in the evening.

The highway at the point of accident, and for several hundred feet in both directions, is substantially straight, but the defendant's car, for a distance of at least four hundred feet, had been ascending a grade that reached a crest at a point about one hundred and fifty feet northerly of the place where the collision occurred. From the crest the road slopes downward for several hundred feet as it continues in a northerly course.

In consequence of these grades, the defendant was somewhat limited in his vision of cars climbing the north slope in a southerly direction. While the diffused glow of the headlights of such a car might be seen before the direct rays shone over the crest into the eyes of a north-bound driver, the direct rays could be seen by him only at the distance of 367 feet when he was 100 feet south of the point of collision, and at the distance of 400 feet when he was 150 feet south of that point.

When the direct rays of the headlights of the Martin car showed over the crest, the plaintiff noted that they appeared on the east lane of the highway and called the defendant's attention to that fact. She immediately noted also that the Martin car was skidding alternately from one side of the road to the other.

The evidence was uncontradicted that by the time the Martin car reached the crest it had struck two north-bound cars that had been drawn to the easterly snow-bank in attempts to avoid collision. All the witnesses who testified as to the speeds of the cars agreed that Martin was driving at the rate of fifty miles per hour, while the defendant was going in the opposite direction at twenty-five miles per hour. The two cars were therefore approaching each other at the rate of 110 feet per second.

In view of the testimony as to speeds, it was impossible for the defendant to have seen Martin's headlights at a distance as great as 400 feet. To have seen them at that distance the defendant must have been 150 feet south of the place of collision. That would leave Martin only 250 feet to cover to the point of impact, which would be inconsistent with the relative speeds. On the other hand, the 367-foot vision at a point 100 feet from the place of collision would leave Martin too much ground to cover. The distance between the two cars, at the moment when the defendant could first see the unusual position and motions of the Martin car, was at most not quite 385 feet. The defendant therefore had slightly less than three and one-half seconds for perception, plus action of a saving nature.

The plaintiff contends that this period was so ample that there was time for more than instinctive action, but the situation becomes over-simplified if we think only of 385 feet in space or three and a half seconds in time. The menace was not approaching the defendant on a straight-line course, leaving a zone of safety upon one or both sides, which the defendant had an appreciable time to recognize and reach. What did threaten him was a car coming on at the rate of fifty miles per hour and, as the parties and all eye-witnesses agreed, skidding or lurching, first on one side of the road and then on the other. The Martin car, out of control, required the whole width of the road for the tracing of its course. What portion of the road it would occupy at any moment except the next was a matter of guess. It could not be known by the exercise of ordinary care two or three seconds in advance.

The plaintiff recognized the unusual nature of the situation at a glance, exclaimed to the defendant, and closed her eyes to avoid the sight of impending threat. She remembered nothing after closing them except that she felt the defendant's car swerve to the left. Up to that time the defendant had been driving, she testified, in the middle of the easterly lane.

In the face of the swift-swinging menace, first on the one hand, then on the other, the defendant's decision was not one that could be made with "deliberation" in three and a half seconds. What he could do by way of dodging a car out of control and operating all over the road at fifty miles an hour depended either upon luck or upon his decision upon the manner and place in which the Martin car presented itself in the moment before the collision was to be accomplished. The Martin car "was out of control and . . . [the defendant] could only guess the direction it was

likely to take . . . he had no opportunity for anything but instinctive action." *Ramsdell* v. *Company*, 86 N. H. 457, 462. "The time was too short for anything but instinctive action, and action under such circumstances 'cannot be said to be careless unless the actor is shown to be unfit to act' in such an emergency." *Miller* v. *Daniels*, 86 N. H. 193, 196; *Collette* v. *Railroad*, 83 N. H. 210, 217. It is not suggested, as far as appears, that the defendant was unfit in that sense. The emergency doctrine could hardly apply more perfectly than to the case at bar.

The conclusion is supported by a further consideration of the alternatives of conduct open to the defendant under the circumstances disclosed. It would be impossible for reasonable men to find that, faced by the immediate situation last presented to the defendant, a driver of average prudence would have swung right, instead of left, in the moment before impact. The jury might disbelieve the testimony of the defendant that his left turn was made when the Martin car, skidding to the east side of the road, presented itself head on to him and a little nearer than was his car to the easterly snow-bank. They might also reject as unbelievable the observation of a neutral witness, traveling northerly behind the defendant's car, that the Martin car was "lurching so much that it was hard to tell which way it was going, because he was lurching from one side of the road to the other," also that the Martin car was heading towards the easterly snow-bank immediately prior to the collision. Even so, the jury could not ignore the fact that it was the right side of the Martin car that suffered from the impact.

Under such circumstances, it would be impossible to conclude that the collision would have been avoided if the defendant had swung to the right rather than to the left, or that reasonable prudence would have prompted him so to swing. Moreover, if the jury might properly have rejected all of the evidence, including the damages to the Martin car, they would have been left to mere conjecture as to the immediate circumstances under the pressure of which the defendant was compelled to act instantaneously, and they would have had no right to assume that his swing to the left was negligent. Equally conjectural would have been a finding that the defendant's reaction, though correct, was negligently slow.

The plaintiff nevertheless contends that the defendant should have pulled far to the right, next to the snow-bank. Such action would have been saving in nature only if undertaken prior to the definition as to place of the final presentation of the menace. Made

during the last stage of the emergency, it would have been totally ineffective if the sole uncontradicted evidence were believed. If that evidence were rejected as unbelievable, there was no evidence at all that the Martin car was at the moment lurching to the west in such manner as to afford escape to the defendant if he had swung east.

Finally the plaintiff contends that the defendant should, at some prior time, have drawn as far off the road as the plowing would permit, at some point south of the place of collision. How could reasonable care enable the defendant thus to anticipate and choose the one spot where the mad movements of the Martin car would leave him and the plaintiff on an island of safety? Only luck, not judgment or care, could lead the defendant to that precise spot in advance of the last unforeseeable loop entered into by the Martin car. And the same observation applies to the contention that due care demanded a slackening of speed by the defendant, or even a full stop. The conclusion that failure so to act was causal negligence would be an unwarranted guess.

*Judgment for the defendant.*

All concurred.