Hillsborough, } No. 3440.
Dec. 7, 1943. }

DOROTHY MARTIN *v*. GRANT W. HODSDON.

BEATRICE JUDKINS *v*. SAME.

FLORENCE HODSDON *v*. SAME.

*Cheney, Nighswander & Lord,* and *Chretien & Craig (Mr. Nighswander* orally), for the plaintiffs.

*Wyman, Starr, Booth, Wadleigh & Langdell (Mr. Louis E. Wyman* orally), for the defendant.

JOHNSTON, J.   The defendant Hodsdon was traveling southerly on his own side of the highway either in the westerly lane or straddling its easterly line.   It was a three-lane highway made up of two lanes of concrete, the westerly one of the three of macadam.   The accident happened in the middle of the afternoon of a fair day. The road was dry with the possible exception of the easterly lane, which may have been wet due to melting snow.   The traveled highway was 32 feet 10 inches wide with shoulders equal in width making a distance of 42 feet between snow banks on each side.   The defendant testified that the speed of his car was from 35 to 40 miles per hour, and his wife testified that when she dozed off about six miles northerly of the accident location he was going at his usual speed, which was 50 miles an hour.

The plaintiffs do not claim that the speed of the defendant's car was unreasonable prior to his having notice of the circumstances of the accident.   They do claim that the neglect of the defendant to

slow down or stop, perhaps due to negligent inattention, after he should have been aware of the dangerous situation, contributed to cause the accident or failed to minimize its effects.

The accident was unquestionably caused by the excessive speed of the car driven northerly by Jules Rousseau. He was an unlicensed, inexperienced minor who had taken the car without permission from the owner. From the time that his car was first visible to the defendant a quarter of a mile away it was going at a speed described by some as terrific and by everyone as between 60 and 70 miles an hour. It passed the witness Marshall, who had his wife and stepdaughter with him, perhaps before coming to the brow of the hill where it first became visible to the defendant. Going northerly down this hill it raced with an unknown car and passed a car driven by the witness Fredette, some of the time there being three cars abreast, all visible to the defendant. The passing of the Fredette car was about opposite some railings, the northerly end of which was 509 feet southerly from pole 227. In front of Miss Fredette, Rousseau won over the unknown car, gained Rousseau's right side of the highway, according to Miss Fredette wavered for a hundred feet out of control, went into the right hand ditch, then shot across the highway to the left and collided with the defendant's Ford car. The collision took place about 30 feet northerly of pole 227, as shown by the scattered glass, the Ford being forced into the westerly snow bank at about that point. Rousseau's Oldsmobile ended its course 64 feet farther north on the westerly edge of the macadam, its motor landing on the easterly side of the cement 28 feet from pole 227 and the transmission northerly of the motor 10 feet from pole 228.

The testimony of Miss Fredette that the Rousseau car after regaining its right side of the highway made a U-turn and approached the defendant's car from the northeast so that if Mr. Hodsdon had slowed down somewhat he could have avoided running into it is incredible. No car going at the great speed of the Oldsmobile could have made such a turn. The collision was almost head-on where the glass was and the Oldsmobile continued 64 feet to the north with its motor and transmission being thrown to the east and northeast.

The fact that Rousseau was on the wrong side of the highway as he raced with another car was not notice to the defendant that he should slow down or stop and there was no legal duty on the defendant's part to do so. Since there was reasonable opportunity for this, Hodsdon had a right to assume that Rousseau would regain his proper place in the highway, which he in fact did.

The immediate cause of the collision was the sudden crossing of the highway by the Rousseau car to the driver's left side due to his great speed and lack of control. After this movement to the wrong side of the highway became apparent, the time before the collision was too short for anything but instinctive action on the part of the defendant. Accordingly any conduct of his as a result of this movement could not be negligence. *Morin* v. *Morin*, 89 N. H. 206. The accident happened some 30 feet northerly of pole 227, which was 509 feet from the guard rail about where the Rousseau car passed Miss Fredette's car. After passing this last-named car Rousseau forged ahead of the unknown car, got over on his right hand side of the highway and before swerving to the left wavered for some hundred feet. During this operation the Rousseau car was traveling 70 miles an hour or close to it and the Hodsdon car around 40 miles. The two cars approached each other at the rate of 160 feet per second. Figures applied to the movements involved in an accident may not be entirely accurate. It is well to consider the testimony of the eye witnesses. The defendant said that the Rousseau car shot across and after leaving the easterly lane came more than 25 feet probably. He used the word "flash" in describing the movement. Miss Fredette testified that it shot to the right and then to the left, striking with a big noise like an explosion. According to Mr. Marshall the Rousseau car suddenly shot directly across the road hitting the Hodsdon car head-on. The stepdaughter, Mrs. Marion, said all of a sudden it went to the left. Reasonable men could not find that any conduct of the defendant's after notice of the sudden crossing of the Rousseau car to its wrong side of the highway was negligent. There was not time for rational thought and choice of action. *Whicher* v. *Phinney*, 124 F. (2d) 929, 931.

However, the plaintiffs argue that the great speed, racing and wavering of the Rousseau car down the hill to the point of its leaving its own lane the last time, gave notice to the defendant that he should act to avoid the collision that did occur. Even in a dangerous situation there is no duty to act unless one can take intelligent, saving action. Due care requires action against only perceivable or expectable risks of injury. *Smith* v. *Babb*, 91 N. H. 472; *Morin* v. *Morin*, 89 N. H. 206; *Loughlin* v. *Johnson*, 89 N. H. 191; *Flynn* v. *Gordon*, 86 N. H. 198; *Piateck* v. *Swindell*, 84 N. H. 402; *McCarthy* v. *Souther*, 83 N. H. 29. A risk is not perceivable or expectable if it is so indefinite and uncertain that no reasonable man would take action against it. Prior to the sudden leaving of the easterly lane, the

fact of where the Rousseau car would come across, if it did so, was of course unpredictable. Avoidance of such a contingency could be nothing more than a matter of luck. Any anticipation could be nothing more than conjecture and speculation and there was no legal duty to engage in such. Operation of the car for the purpose of avoiding a sudden crossing to the wrong side by the Rousseau car would not only be futile, unless luck were with it, but also possibly dangerous as it might place the car directly in the path of the menace. There was no negligence on the part of the defendant in failing to anticipate the sudden, faulty crossing of the Rousseau car and to take precautions, since it was impossible to take reasonable, protective action. *Morin* v. *Morin, supra,* 210.

It cannot be said that the speed of the defendant's car was a legal cause of the accident, in other words, that but for the speed the accident would not have happened. But for the reckless speed of the Rousseau car, the accident would not have happened; but for its crossing to the wrong side of the highway, there would have been no collision. If the defendant had slowed down or stopped, the collision may have occurred as it did or perhaps even more violently. To say otherwise is speculation only. It could not be found apart from conjecture that Hodsdon's speed contributed to cause the accident.

Where there is no negligence or no legal causation, there is neither liability for failure to avoid the accident nor for any damages caused thereby. There is no duty to lessen damages if the actor is not responsible for the accident. To require that an operator should slow down to lessen the force of a possible impact might result in an accident when otherwise it would be avoided, or in making one worse. We are not now concerned with lessening the force of a certain impact or with equipping a car against possible collisions. There is no legal duty to lessen the force of a collision by operation of a car where there is not responsibility for avoiding it.

The motions for directed verdicts should have been granted.

*Judgments for the defendant.*

All concurred.