Hillsborough,
Feb. 2, 1932.

DORILLA GIROUX *v.* THE NEW YORK LIFE INSURANCE COMPANY.

*Emile Lemelin* (by brief and orally), for the plaintiff.

*George M. French* (by brief and orally), for the defendant.

MARBLE, J. In her application for reinstatement the insured represented that, to the best of her knowledge and belief, she was in the same condition of health she had been in when the policy was issued, and that she had not "within the past two years" had "any illnesses, diseases or bodily injuries" or "consulted or been treated by any physician or physicians." She certified that these representations were full, complete and true, and agreed that the defendant, believing them to be true, should rely and act thereon.

The plaintiff's evidence tended to prove that the insured had ceased to work as a factory operative on December 28, 1928, but not on account of illness, and that up to May 1, 1929, when the plaintiff (her mother) "sent her to see the doctor," she had never been sick and had never sought or received medical treatment or advice. Dr. Gagnon, who saw her on that date, stated that she was then "beyond any human or medical help." In answer to an inquiry as to how long

she must have been suffering from the disease, he said: "Of course it could have been possible that it was a case of galloping consumption, that is liable to last from six to eight weeks and no more."

Dr. Towle, a witness called by the defendant, testified that the insured visited his office late in the summer of 1928, and that he found her "in a rundown condition, bordering on tuberculosis." There was also evidence that the insured had left the factory because of sickness, and that she had told another operative either that she had seen or was going to see Dr. Towle.

Assuming, as the defendant contends, that the testimony of Dr. Towle was not effectually contradicted, it does not follow that the motion for a directed verdict should have been granted. The doctor was testifying from memory; he was not acquainted with the insured or with any of her family; he stated that she called at his office only once, that he had never seen her before, that she was a "cash patient," and that he made no record of the call. Under such circumstances, it was for the jury to determine how much credence should be given his testimony. *Lally* v. *Insurance Co.*, 75 N. H. 188, 190. They could "believe or disbelieve the defendant's witnesses." *Nawn* v. *Railroad*, 77 N. H. 299, 305.

"The evidence upon which the nonsuit was moved came from the party . . . who moved it. A nonsuit is not granted in such cases, for the plaintiff is not obliged to yield to the evidence, and is entitled to have it weighed by the jury." *Pillsbury* v. *Pillsbury*, 20 N. H. 90, 97. See also *Williams* v. *Duston*, 79 N. H. 490, 491; *Hill* v. *Carr*, 78 N. H. 458, 462.

The case of *Dwyer* v. *Insurance Co.*, 72 N. H. 572, on which the defendant relies, is not in conflict with these cases. There (*p.* 575) the falsity of certain representations was conceded.

In one of the proofs of death entitled "Claimant's Statement" the following question was asked: "From what date was deceased totally disabled and thereby prevented from performing any service for remuneration or profit?" To this question the plaintiff answered: "Since January 1, 1929." At the trial the plaintiff testified that she did not remember such a question and that she could not read or write. The statement is dated May 17, 1929, and the plaintiff signed by mark.

Statements in proofs of death made by a claimant against his own interest are ordinarily admissible as admissions; but where, as here, no question of estoppel is involved, such statements are not conclusive, but are open to explanation and correction. 5 Joyce, Insurance (2d

*ed.*), *p.* 6175. See also *Bachman* v. *Insurance Co.*, 78 N. H. 100, 104; *King* v. *Hutchins*, 28 N. H. 561, 575, 576; *Fitts* v. *Brown*, 20 N. H. 393, 397; *Pecker* v. *Hoit*, 15 N. H. 143, 145.

"The evidence . . . is uncontradicted that the plaintiff made the doctors' certificates part of the proof of death in the hour of her bereavement . . . They were not read by or to her, nor were their contents or purport explained. She . . . could not read. She signed where she was told to sign. All this would have justified the jury in giving no effect to the so-called admissions." *Frazier* v. *Insurance Co.*, 161 Mo. App. 709, 717.

In its brief the defendant assumes that the presiding justice in directing the verdict made and had authority to make certain findings of fact. Nothing of the kind appears in the record even by implication. The order and accompanying agreement for judgment was merely an expeditious method of avoiding another trial. Whether, under the circumstances, justice requires that the defendant be relieved from the agreement is a question for the superior court. The order here is

*Exception sustained.*

All concurred.