Strafford,  }
Jan. 5, 1943.  } No. 3366.

RENA E. DADE, *Adm'x v.* BOSTON & MAINE RAILROAD.

*Sewall, Varney & Hartnett* and *Keefe & Keefe* (*Mr. Hartnett* orally), for the plaintiff.

*Hughes & Burns* (*Mr. Burns* orally), for the defendant.

MARBLE, J.   At the time of his death the plaintiff's intestate was employed by the defendant as assistant to the track supervisor for the district extending from Exeter in this state to Rigby in the state of Maine.   When the accident occurred he was operating a gasoline-driven section car and proceeding easterly on the defendant's track toward North Berwick, Maine.   He was seated at the left rear of the car facing east.   His sole companion, a rail inspector, Stewart Cheney by name, "was seated on the right forward corner of the car" and "was looking upward and back northerly."

The track at Indigo Hill Crossing was guardrailed.   The channel or flangeway, so called, between each main rail and the adjoining guardrail was at least five inches deep, an inch and three-quarters wide at the top, and five or six inches wide at the bottom.   The plaintiff contended at the trial that stones large enough to derail the section car had been allowed to accumulate on the rails or in these flangeways and that the accident was caused either by these stones or by a defective wheel on the section car or by both.

The defendant's evidence tended to prove that an automobile driven by George H. Yeaton, approaching the crossing from the south, struck the right side of the section car; that the rear end of the section car was thereby raised from the rails and strong pressure exerted against the left forward wheel, which, though properly inspected and in perfect condition, broke under the strain. Cheney testified that he "felt a crash," the "car jolted," there was a "wrenching of metal," and he found himself "going through the air."

He "landed in the middle of the track," and the plaintiff's intestate lay immediately ahead of him.

The section car was not overturned, but the metal fenders covering the right-hand wheels were broken off and a gasoline can, which had been placed directly back of one of the fenders, was dented and scratched. The fenders and can are before us as exhibits. The fenders are scratched and bent; the can is dented and a portion of its red paint scraped off. There was evidence that scratches and a spot of red paint appeared on the bumper of Yeaton's automobile after the accident.

The plaintiff first brought action against Yeaton, alleging that her intestate's death was occasioned by the derailment of the section car caused by the impact of Yeaton's automobile. At the trial of the present action she denied that the automobile struck the section car at all and introduced some evidence to that effect. Yeaton, who was eighty-nine years old, was unable to appear at the trial but testified by deposition that he "did not hit Mr. Dade's car."

The plaintiff stated that after bringing suit against Yeaton she found, on further investigation, "that there was no record at Concord of his automobile being involved in this accident," and she intimated that her suit was dropped for that reason. Thereupon, the defendant offered to prove that the sum of two thousand dollars was paid her in settlement of the case. The exception to the exclusion of this evidence need not be considered since, in our opinion, the defendant's motion for a directed verdict should have been granted.

Although the section car did not tip over on its right side, the plaintiff offers no explanation for the broken fenders and the dented can. The wheel was composed of a "demountable tire" (including spokes, tread, and flange) and a "bolted hub" — the two parts being "held together with four bolts." The hub was strengthened on the inner side of the wheel by eight sprocket-like projections known as reinforcing webs. These webs were welded to the cylindrical portion of the hub and to a supporting disk, which was bolted to the demountable tire. All eight of the reinforcing webs broke away from the disk when the wheel collapsed.

Gilmore E. North, who picked up the pieces of the broken wheel shortly after the accident, professed to have discovered a flaw "on the hub." He stated that "on the hub of the wheel or the hub, the spoke that was broken there was the bright part of the new break and there was the discoloration of where the flaw was." He further described the "appearance of the break" as a "place on the hub on the

arm" which "had been broken off of the spoke, half of it was discolored, the other half was bright."

While these descriptions are clumsily phrased, it is fairly apparent that the witness was trying to assert that he had detected evidence of a crack in one of the reinforcing webs, which, to quote the words of plaintiff's counsel, "look like spokes." There is no claim that there was a flaw in one of the large metal spokes of the wheel. The cylindrical part of the hub with the broken webs attached, which was introduced as an exhibit, completely refutes North's assertion. No breaks appear which are not fresh and clean. The cylindrical portion of the hub is not broken.

In the light of the evidence furnished by the various exhibits, the case might well be disposed of under the general rule that oral testimony must yield to indisputable physical facts. *Brown* v. *Mailhot*, 89 N. H. 240; *Lavigne* v. *Nelson*, 91 N. H. 304, 308; *Labor* v. *Company*, *ante*, 256. But the oral testimony in the present case, quite apart from this particular rule, is insufficient, even if entirely true, to justify the submission of the issues to the jury.

None of the experts who testified at the trial expressed an opinion concerning the effect on the wheel of a flaw such as that described by North. The testimony on which the plaintiff relies merely embodies such inept generalizations as that if a crack in the hub "were large enough to be a source of danger it would be detectable," that if the wheel of a section car breaks while the car is "going along on an open track" it "must be a defective wheel," that a crack in steel "will run unless stopped," and that "the more of the fins [webs] that were broken the more it would tend to weaken the wheel." A careful examination of the record fails to disclose any evidence tending to prove that a crack in a single reinforcing web would so far weaken the wheel as to cause it to break under the conditions claimed by the plaintiff. That such a consequence would be likely to result from such a defect is not a matter of common knowledge.

On the day of the accident trucks had passed over the crossing loaded with gravel for use on a certain construction project then in progress. It was the plaintiff's contention that stones falling from these trucks onto the rails or into the flangeways had caused the derailment. No witness testified, however, to having seen a stone of any substantial size near the rails or any stone in a position to interfere with the safe passage of traffic. The testimony on the subject may be summarized as follows:

A state motor-vehicle inspector who came immediately to the

scene of the accident saw down in the flangeways "a few stones" of the kind used for cement work; they were "about the size of a walnut" or "a little larger." (The depth of the flangeways, as already stated, was at least five inches.) Fifteen or twenty minutes after the accident a woman standing at the side of the road some distance from the crossing saw some men "kicking what seemed to be like little rocks out from the track," and "one man" (she believed him to be a workman on the "construction job") stooped down, and "he had his fingers in between the rails and he was digging out and like a little rock came out of the rail."

The defendant's division engineer stated that section cars might be easily derailed by "striking objects on the rail" and so were equipped with guards designed to "sweep obstructions off the top of the rail." The section car in question was so equipped. Stewart Cheney testified that he found "small stones" in the flangeways which "might have dropped out of the end of trucks" but none "of any particular size." He observed nothing in the flangeways "within at least three and possibly four inches of the top of the rail." This space left "sufficient clearance for the flange on the motor [section] car to run."

It is plain that the foregoing testimony furnishes no data on which to base a reasonable inference that the section car was derailed because of stones on the rails or in the flangeways. The most that it indicates is the possibility that the accident may have been due to such a cause, and this court has repeatedly held that an issue of fact which depends wholly on conjecture cannot properly be submitted to the jury.

The plaintiff's contention that she was entitled to go to the jury "through the mere fact of derailment" is untenable. The doctrine of *res ipsa loquitur* is inapplicable where, as here, the accident may have been due to some cause other than the defendant's negligence. *Boucher* v. *Railroad*, 76 N. H. 91, 96.

The Federal Employers' Liability Act "does not make the carrier an insurer of the safety of its employees" (*Sweeney* v. *Railroad*, 87 N. H. 90, 93) and since the plaintiff has failed to sustain the requisite burden of proof on the issue of the defendant's negligence (*Watkins* v. *Hustis*, 79 N. H. 285), the order must be

*Judgment for the defendant.*

All concurred.

ON MOTION FOR REHEARING. After the foregoing opinion was filed the plaintiff moved for a rehearing.

MARBLE, J. The plaintiff charges the defendant in effect with the suppression and fabrication of evidence and asserts that the record contains no intimation of an admission on her part that the material exhibits introduced by the defendant at the trial are authentic.

Direct evidence in support of the plaintiff's accusation is wanting. There is evidence, it is true, that some parts of the broken wheel were lost in the office of the defendant's supervisor of work equipment, but this evidence is merely persuasive, at most, and cannot serve as a substitute for proof of definite defects. *Jakel* v. *Brockelman*, 91 N. H. 453, 455; *Login* v. *Waisman*, 82 N. H. 500, 502. Furthermore, the applicability of the rule that a nonsuit is not ordered on evidence introduced by the defendant (*Fox* v. *Manchester*, 88 N. H. 355, 359; *Giroux* v. *Insurance Co.*, 85 N. H. 355, 356, and cases cited) may be conceded, and yet the plaintiff cannot prevail. For, as stated in the opinion, there is no evidence that the defect which North claimed to have discovered was a substantial factor in causing the accident.

*Motion denied.*

All concurred.