Hillsborough, } No. 3556.
  Feb. 5, 1946. {

FREDERICK H. MOULTON *(by his next friend) v.* DANIEL NESMITH.

JUNE YOUNG *(by her next friend) v.* SAME.

ALLEN YOUNG *v.* SAME.

*Thomas J. Leonard* (by brief and orally), for the plaintiffs.

*Wyman, Starr, Booth, Wadleigh & Langdell* (*Mr. Louis E. Wyman* orally), for the defendant.

JOHNSTON, J.  The plaintiffs claim that although Moulton was wrong in his quick judgment to drive to his left side of the Hollis road, he was induced to do this by negligent conduct on the part of the defendant.  Specifically it is said that Nesmith drove too far as if he were going on the Brookline road and then abruptly turned to his right onto the Hollis road and that he thus misled the driver of the Chevrolet.

There is no reliable evidence to support this claim.  The testimony of Moulton is just as consistent with an erroneous impression of a confused, inexperienced boy under an illusion caused by the curve of the road as it is with faulty operation of the truck.  "A. Well, by the rate of speed he was going, and in the middle of the road, I thought he was going to Brookline—it looked as though he was going to Brookline."  On cross-examination he said: "A. No, but it looked like he was going to Brookline. . . .  A. It still looked like it when he got nearer, too."  The testimony of the fourteen year old passenger, given on direct examination, is just as unsatisfactory: "A. I thought it was going to Brookline, so I didn't watch it anymore. . . .  At first it looked as though it was going down Brookline Street, and I didn't watch it any more; then I looked again and it was coming right for us."  *Boucher* v. *Railroad*, 76 N. H. 91; *Berquist* v. *Company*, 91 N. H. 428.

Photographs introduced in evidence by the plaintiffs show the tire marks of the truck for at least thirty or forty feet in its rear. They make not an abrupt turn across the area of the intersection from a course leading to Brookline but the natural course of a vehicle proceeding to Hollis from Pepperell, save for the last instant turn to the right off the road in an attempt to avoid the collision.  This last

instant turn of the truck followed and did not precede Moulton's turn to the left of the highway he was traveling. "Q. I call your attention to question 190 in your deposition. Question, 'You started to turn to your left before he started to turn to his right?' Answer, 'Yes.' Did you make that answer? A. Yes. . . . Q. Yes, but you were not going to stop; you were going to let the truck go to Brookline and pass it on its left hand side? A. It would be on his right hand side." Again Moulton was interrogated as follows: "Q. Now you think this truck turned to its right when it was only fifteen feet from you? A. Just about that. Q. And at that time you hadn't started to turn toward your left, or had you? A. Well, I had my wheels turned a little to the left. Q. What? A. I had my wheels turned a little to the left." The tire marks, so far as shown, are on the right-hand side of the highway. It is contrary to the indisputable physical evidence to argue that Moulton was misled by negligent driving of the defendant that abruptly changed from a course to Brookline to one for Hollis. *Brown* v. *Mailhot*, 89 N. H. 240; *Lavigne* v. *Nelson*, 91 N. H. 304; *Dade* v. *Railroad*, 92 N. H. 294.

Of course it was the duty of Nesmith to avoid a collision with the Chevrolet in his path on the east side of the highway if by the exercise of reasonable care he could do so. *Mooney* v. *Chapdelaine*, 90 N. H. 415. The center of the sedan when it came to rest was, according to evidence introduced by the plaintiffs, some eighty feet from a sign post in the triangular grass plot. The southerly point of the plot was forty-eight feet and nine inches from the said post. The point of collision between the two vehicles was therefore some thirty-five or forty feet southerly of the southerly point of the plot. The plaintiff Moulton testified that when he first saw the truck he was about fifty feet north of the point of the triangle and that the truck was then one hundred and seventy-five feet from said point.

There was no duty on the part of Nesmith to take saving action until he knew or should have known that Moulton was going to invade the easterly half of the Hollis road. Moulton testified on direct examination with regard to the point of his turning: "Q. And at that time you were right to the right of the center of the road at the intersection? A. Yes." He had gone fifty feet or more than half the distance to the point of collision before there was notice to Nesmith of need of precautions. During this same time before notice of the emergency created by Moulton's conduct, the defendant must have come on his way more than half of his distance to the scene of the accident, one hundred and seventy-five feet less thirty-five or

forty feet. The plaintiff driver testified that when he started to turn the truck was only fifteen feet away. This is probably an underestimate but certainly the defendant was less than sixty-five feet away from the place of the collision when he should have known that there was need of saving action. According to Moulton the truck was going at a speed of thirty-five miles per hour. It could not reasonably be found that the defendant had time for necessary thought, for putting the thought into action and for the action to take effect. At the most he had but one or two seconds, as the sedan went diagonally from the point of intersection across his path of travel to the place of the collision thirty-five or forty feet away. *Britton* v. *Glass*, 91 N. H. 218; *Martin* v. *Hodsdon*, 93 N. H. 66.

The cause of the accident was the negligent crossing of the highway to the easterly side by the inexperienced boy of sixteen in the path of the approaching truck. He testified that he was "practically stopped" on the west side of Hollis Road before commencing his turn to the left. His negligence consisted in not waiting until it was known what course the truck would pursue before leaving this position of safety.

The defendant's motions for directed verdicts should have been granted.

*Judgments for the defendant.*

All concurred.