Rockingham,
May 2, 1950. } No. 3896.

DONALD BONENFANT, *by his father and next friend v.* ALBANI HAMEL.

*William H. Sleeper* and *Wayne J. Mullavey* (*Mr. Mullavey* orally), for the plaintiff.

· *Hughes & Burns* and *Donald R. Bryant* (*Mr. Bryant* orally), for the defendant.

DUNCAN, J. The sole issue presented is whether there was evidence upon which the jury could find that the defendant was entitled to the benefit of the emergency doctrine. We are of the opinion that there was. To warrant application of the doctrine, there must be evidence that the party seeking to invoke it was called upon to take immediate action to meet the dangers of "a sudden unexpected occurrence," not occasioned by his own fault. *Kardasinski* v. *Koford*, 88 N. H. 444, 446.

The evidence in this case disclosed that when the accident occurred the defendant was travelling from Manchester to the seashore, along route 101 which is a cement highway at the place in question. Moore Street in Epping intersects route 101 from the right as the defendant was proceeding. When he was one hundred to one hundred twenty-five feet from Moore Street, the defendant saw Donald's eight year old sister on a bicycle, travelling down grade on Moore Street toward

route 101. She was followed at a distance of about ten feet by Donald, on a tricycle. Donald was six at the time.

The travelled way of Moore Street, a gravel surface, divided as it entered the main road, one branch turning left and the other right. There was evidence that the sister stopped before reaching the cement highway. At some time Donald lost control of his tricycle. According to the defendant, the tricycle took the left turn, the defendant brought his automobile to a stop when the tricycle was eight or nine feet away, Donald fell off backward when it was four or five feet away, and the tricycle continued on, colliding with the right front mudguard of the defendant's automobile.

According to the only other eye witness who testified, the tricycle followed the right hand branch of Moore Street, and collided with the automobile before the latter was brought to a stop. The witness testified that the tricycle did not run against the automobile, but since the automobile passed between her and the tricycle, she could not say what part of the automobile struck the tricycle. It was her opinion that the automobile approached the intersection at a speed of thirty-five miles an hour, and that although the tricycle was travelling at a "fair rate of speed" for a tricycle, it was not going "too fast."

The defendant testified that his own rate of speed was twenty to twenty-five miles an hour when he first saw the children, and that he slackened his speed to twelve to fifteen miles an hour by taking his foot from the accelerator. He estimated that when he was eighty to ninety feet from the intersection, the boy was passing a stone post, forty to fifty feet from route 101. It could be found that the defendant then first realized that the tricycle was out of control. The defendant also testified in answer to a question as to whether he was further away from the point of collision than the boy when he saw the tricycle was out of control: "Well yes I was a little further away from him coming down the hill." He further testified "when I saw him coming the way he was I was approximately, when I first saw him I was approximately around forty, about forty feet, somewhere around there."

If, as the defendant argues, this testimony warranted a finding that the defendant was only forty feet from the intersection when he first realized that the tricycle could not be stopped, he had less than two seconds to act if travelling at fifteen miles an hour. If he was travelling at thirty-five miles an hour, less than one second was available. On the other hand, if he was eighty feet away when he realized the danger, he had less than four seconds to act, or less than two, depend-

ing upon whether his speed was fifteen or thirty-five miles an hour.

Whatever version of the facts the jury might find from this evidence to be credible, either as to distances or speed, it could find that the defendant encountered "a sudden unexpected occurrence calling for immediate action to meet its dangers." *Kardasinski* v. *Koford, supra,* 446. Numerous decisions involving situations where a party was afforded four seconds or less for action support this proposition: *Kardasinski* v. *Koford, supra; Miller* v. *Daniels,* 86 N. H. 193; *Morin* v. *Morin,* 89 N. H. 206; *Bellevance* v. *Boucher,* 89 N. H. 361; *Sullivan* v. *Sullivan,* 91 N. H. 341; *Martin* v. *Hodsdon,* 93 N. H. 66; *Maiwald* v. *Company,* 93 N. H. 276; *Moulton* v. *Nesmith,* 94 N. H. 23; *Labrecque* v. *Childs,* 94 N. H. 451.

The plaintiff's assertion that there was no evidence that the defendant's action was "affected by the stress of the occasion" (*Frost* v. *Stevens,* 88 N. H. 164, 166) does not require acceptance. The evidence tended "to indicate . . . that [the defendant] chose the wrong course of action, when alternatives were offered." *Frost* v. *Stevens, supra,* 167. Admittedly he did not turn to the left, although there was nothing to prevent his doing so. That the collision could thus have been avoided is a possible finding. At least it is not plain that the "action . . . taken was . . . the best if not the only action available." *Frost* v. *Stevens, supra,* 167. If the evidence that the defendant did not stop before the collision were believed, it could be found that this was because his mental processes were retarded by the emergency if not confused by it. *Kardasinski* v. *Koford, supra.*

Whether the defendant was called upon to take saving action within four seconds or less, whether this constituted an emergency for which he was not to blame, and whether he was negligent in failing to avoid the collision, were all questions properly determinable by the jury.

No claim is made that the instructions did not properly state the emergency doctrine. Its application was left to the jury, with appropriate instructions indicating that the defendant was not entitled to its benefit if his negligence gave rise to the emergency. *Folsom* v. *Railroad,* 68 N. H. 454; *Precourt* v. *Driscoll,* 85 N. H. 280, 290. It cannot be said as a matter of law that the defendant negligently brought about the emergency (*Berounsky* v. *Ogden,* 90 N. H. 334), or that his speed was too great for expectable contingencies. *Hersey* v. *Fritz,* 91 N. H. 484. The plaintiff's exception is overruled.

*Judgment on the verdict.*

All concurred.