Coos, }
Apr. 3, 1951. } No. 3974.

LAURIER LAMONTAGNE *v.* CANADIAN NATIONAL RAILWAY CO.

8

*H. Thornton Lorimer* and *J. Ls. Blais* for the plaintiff.

*Upton, Sanders & Upton* and *Robert Rich* for the defendant.

BLANDIN, J. The defendant's motions for a nonsuit and directed verdict were properly denied. Rising above the sea of figures which of necessity are an inevitable part of such cases as this the following landmarks appear. If the fireman was on the lookout as admittedly it was his duty to be it is findable that he could have seen Lettre the flagman from a distance of at least eight hundred thirty-two feet away. This is conceded even by the defendant's civil engineer. It could also be found at this moment that Lettre was at the seventh pole or eight hundred twenty-seven feet west of the crossing which places the fireman and engineer then about sixteen hundred fifty-nine feet from the scene of the accident. The fireman testified that as soon as he saw Lettre he "instantly" shouted to the engineer "Soak it"! The engineer said upon hearing this he "instantly" applied the brakes and that under conditions that day he could stop in eleven hundred feet *from the time he heard the warning.* He not only failed to stop before striking the trailer but went on two hundred forty feet beyond the crossing.

Under the circumstances it is obvious the jury could have found the defendant negligent because the fireman was not keeping the lookout which he claimed he was (see *Fraser* v. *Railway*, 84 N. H. 107, 111, 112) and which it was his duty to do. They could also have found that he did not seasonably warn the engineer or that the latter did not act with reasonable promptness to stop the train. If the jury allowed the fireman two to three seconds from the time he saw Lettre to react and shout to the engineer and if they also subtracted forty-six feet, being the distance from the engineer's and fireman's seats to the front of the engine, the train moving at an agreed rate of seventy-five feet per second would still be some thirteen hundred ninety feet to fourteen hundred sixty-five feet from the crossing when the engineer heard the warning. This allowance cannot be found unreasonable considering the fact that the experienced fireman was on the lookout and had to do nothing except

to speak to the engineer. See *Jones* v. *Railroad*, 83 N. H. 73, 85. The engineer said he could stop in eleven hundred feet from the time he was warned. The jury did not have to believe this but they were entitled to take this experienced operator at his own word.

The defendant's attempt to escape this conclusion rests mainly on its claim that the plaintiff testified it was five minutes after the trailer stuck before the crash occurred. The defendant contends that since Lettre stepped to the ground and immediately ran up the track at the plaintiff's request he must have traveled around seven hundred twenty feet a minute and hence been far beyond where he and the plaintiff claimed he was when he saw the engine. The defendant says the plaintiff's story postulates a physical impossibility, citing *Brown* v. *Mailhot*, 89 N. H. 240, and the plaintiff is bound by it under the doctrine of *Harlow* v. *Leclair*, 82 N. H. 506. Neither of these contentions holds water. The plaintiff is not bound to exactness in his estimate of time (*O'Brien* v. *Company*, 95 N. H. 79, and cases cited) and this principle seems particularly applicable at a moment of crisis when the jury could reasonably believe from their common knowledge that seconds might seem like minutes.

There was further evidence of the defendant's negligence in its failure to inform and instruct the train crew regarding conditions at the crossing including a comparatively recent increase in traffic. In October, 1947, the city of Berlin commenced working the Dresser pit, using the crossing for its trucks and shortly thereafter the State further increased the traffic by also hauling gravel from the pit. During approximately two weeks just before the accident city trucks made eighty-four round trips over the crossing. From the tracks there was a clear view of the pit and the engineer admitted he had seen a bulldozer there about a week before the accident. He denied as did the fireman seeing a steam shovel although the shovel operator testified he had seen trains pass. Many children and their parents used the crossing daily in summer and at various times other persons traveled it to reach Father Lauziere's camp and recreational facilities. Without further detailing the evidence sufficeth to say that the use of the crossing was substantial and had increased during the year before the collision. Evidence of these facts was admissible (*Smith* v. *Railroad*, 87 N. H. 246, 254; *Golej* v. *Varjabedian*, 86 N. H. 244, 246) and the defendant is chargeable with knowledge of them. *Carbone* v. *Railroad*, 89 N. H. 12, 15. It cannot escape liability because its employees claim ignorance of conditions. *Smith* v. *Railroad, supra.* It is findable that had the defendant acted on

this knowledge with ordinary care it would have so instructed the train crew that a keener lookout would have been maintained and prevented the accident. The defendant therefore takes nothing by its exception to the charge that the jury could find it causally negligent in failing to inform and instruct the train crew.

The defendant argues it has sustained its burden of proving that the plaintiff was guilty of contributory negligence as a matter of law. The basis of this claim is that the plaintiff failed to make a straight approach to the crossing so that the left rear wheels got onto low ground east of the gravel road and the trailer did not clear. The plaintiff says the difficulty was caused by the left rear wheel of the tractor dropping into a little mudhole just as it passed over the second or south rail. There was evidence that going to the pit the plaintiff approached the crossing cautiously in the fifteenth or lowest gear, "just crawling" at about one to two miles per hour with his helper Lettre on the ground watching and giving directions. In this manner he successfully negotiated the crossing. On the way back he was following practically the same procedure. All was going well and there was a clearance of several inches until the rear wheel of the tractor dropped into the mudhole. There was testimony in effect that the plaintiff drove across both going and returning at a slight angle in order for the unwieldy arrangement to pass safely over the rails. If he made an error in judgment on his return this is not necessarily fatal (*MacKelvie* v. *Rice*, 92 N. H. 465, 467) and the facts clearly indicating that he took some care the question of contributory negligence was for the jury. *Hill* v. *Company*, 96 N. H. 14.

Once stuck he was faced with a choice of trying to unhook his tractor from the trailer which he says might take anywhere from half a minute to ten or fifteen minutes to do, leaving the trailer on the track where he feared a collision might injure passengers on the train, or of flagging the train by Lettre while he tried to get the trailer off the crossing. In choosing to do what he did it cannot be said he was conclusively guilty of negligence. (*MacKelvie* v. *Rice, supra.*)

The defendant's next contention that the doctrine of the last clear chance was erroneously submitted to the jury is refuted by the facts. It is findable that the plaintiff was in a position of danger from which he could not escape. The fireman admitted that as soon as he saw Lettre with his handkerchief above his head he knew there was danger of a collision and that probably the truck was

stalled. The engineer admitted that as soon as the fireman shouted "Stop! truck"! he knew there was probably a truck stalled at the crossing. These facts and the reasonable inferences to be drawn from them warrant the finding that the defendant knew of the plaintiff's peril, knew that he could not help himself and that it then, as has been shown, could have prevented the accident by ordinary care. *Peppin* v. *Railroad,* 88 N. H. 145, 151. The last clear chance was properly submitted to the jury (*Mack* v. *Hoyt,* 94 N. H. 492), who were not compelled to find the plaintiff could have seasonally moved either vehicle. It also appears the charge contains in plain words all the essential elements of the doctrine and the exception to it is overruled.

The claim that the charge was erroneous in that the jury was not told that the burden was on the plaintiff to prove each element of the doctrine requires no extended consideration. The Court told the jury several times that the burden was on the plaintiff to prove all facts essential to support his claim. To require as a matter of law that the burden of proof be charged again and again as to each element of a case seems unnecessary and unwise and the exception is overruled.

We now turn to the defendant's exceptions to the denial of its requests numbers 7, 12 and 15. The seventh request in substance was that there was no evidence of the engineer's negligence in failing to apply the brakes as the train approached the crossing. It has already been pointed out that the jury could find the engineer traveled an unreasonable distance after the fireman's warning before putting on the brakes. Furthermore there was independent testimony that the brakes were first applied "just after" the train passed Jericho Brook some fifteen hundred thirty feet from the scene of the accident and then "they loosed again and ran free." It could be found from this that the engineer negligently waited before braking or else negligently released the brakes when he should have kept them on. The instruction was properly denied. For the same reasons the Court rightly refused the twelfth request, in effect that there was no evidence the train could have been stopped in less distance than it was. The fifteenth request was that the plaintiff was under a duty to use reasonable care in the manner in which he drove over the crossing and that if he became stuck through failure to do this the verdict must be for the defendant. The question of the plaintiff's negligence in the way he handled his equipment was covered by the Court when he stated the defendant's claim

that the plaintiff did not handle his vehicle properly and added that fault on the plaintiff's part would bar his recovery. It seems to us the instructions taken as a whole were correct and that it is reasonably certain the jury understood them. The defendant therefore takes nothing by its exception. *Davis* v. *State*, 94 N. H. 321, 323, and cases cited.

We come finally to the claim that the Court erred in granting the plaintiff's motion to add interest to the verdict from the date of the accident. The plaintiff requested the Court to instruct the jury that in the event of a verdict for him they should add interest from the day of the accident to the date of their verdict. The Court did not do so and at the close of the charge plaintiff said at the bench in the presence of defendant's counsel "may it also appear that we have reserved to the Court the matter of interest . . . . " Defendant's counsel offered no objection then but now argues that the Court should have instructed the jury as the plaintiff requested or else informed them that they need not consider interest. It is clear that the plaintiff did not waive his claim to interest (*cf. Davenport* v. *Company*, 92 N. H. 194) and the silence of defendant's counsel when the matter was broached to the Court might reasonably be understood as acquiescence in the procedure suggested. In the absence of instructions it should not be presumed that the jury took it upon themselves to add interest. The request was proper and the exception cannot be upheld. *Emery* v. *Company*, 89 N. H. 165, 170, 171.

This appears to dispose of all defendant's claims of merit and the order is

*Judgment on the verdict.*

All concurred.