Merrimack,
No. 4616.

CHESTER H. CYR *v.* GEORGE SANBORN.

Argued March 4, 1958.

Decided March 20, 1958.

246

 

*Devine & Millimet* (*Mr. Millimet* orally), for the plaintiff.

*Upton, Sanders & Upton* (*Mr. Sanders* orally), for the defendant.

LAMPRON, J. This accident happened between 5:15 and 5:30 P. M. at the intersection of the Daniel Webster Highway and the Pembroke Sanatorium Road on a clear dark night and dry roads. The Highway was 30 feet wide and the Sanatorium Road, which extended straight easterly from it at a 90° angle up a fairly steep hill, was 24 feet wide.

Sanborn was driving a half-ton pickup truck. It was not equipped with directional lights but on the rear left corner of the body, on a bracket, it had a combination tail light and stop light: "a white light to illuminate the license plate . . . a steady red light; and also a stop light . . . actuated . . . by your brake pedal." He was traveling south and knew there were two cars following immediately behind him and that there were cars an indeterminate distance in back of them.

He testified that he proceeded at about 45 miles per hour to approximately 300 feet north of Sanatorium Road. He then threw his clutch out and coasted with his left wheels 2 feet over to the left of the center of the Highway. He continued southerly and tapped on the brake, to flash the stop light off and on, about 6 to 8 times up to a point about 50 or 60 feet north of the intersection where his speed had decreased to about 25 miles per hour. He then shifted into second gear, applied his brakes hard to slow down to about 10 miles per hour, and, when he was just a little north of Sanatorium Road, turned left therein and the collision occurred.

Cyr testified that he was proceeding southerly at about 35 miles per hour and was the third car behind Sanborn. There was a car about two or three car lengths in front of Cyr and another about the same distance ahead of it. The road was straight and as there were no cars coming in the opposite direction Cyr testified that he put on his directional signal, blew his horn, and proceeded to pass the car immediately ahead which he did at a speed of about

45 to 50 miles per hour. He further testified that, as he proceeded to overtake the next car, Sanborn's truck was down to the right two or three car lengths ahead of it, and as Cyr came abreast of that car Sanborn's truck came from the right hand side of the road and cut across very sharply into the intersection of Sanatorium Road when Cyr's car was from 100 to 125 feet away. He testified that he immediately swerved to the left, applied his brakes, and blew his horn, and was practically stopped when the right front of his car came in contact with the left rear of Sanborn's truck.

RSA 263:34 provides that "No person shall turn a vehicle at an intersection . . . unless and until such movement can be made with reasonable safety. No person shall so turn any vehicle without giving an appropriate signal in the manner hereinafter provided in the event any other traffic may be affected by such movement. A signal of intention to turn right or left when required shall be given continuously during not less than the last one hundred feet traveled by the vehicle before turning." The required statutory signal is to be given in a specified manner by hand and arm from the left side of the vehicle or by a signal lamp or mechanical signal device. *Id.*, *ss.* 35, 36. Sanborn admitted that he gave no signal of his left turn by means of the hand and arm and he does not contend that the combination light on his truck complied with the statutory requirements of a signal lamp or device. However it was not unlawful to operate his truck without such lamp or device because it had been manufactured or assembled prior to January 1, 1952 (RSA 263:37) and the Court so instructed the jury.

Sanborn requested that, in the event the Court instructed the jury concerning any of the provisions of RSA 263:34, 35, 36, the following instructions be given: "6 a. Mr. Sanborn was only obligated to signal his intent to turn left to such drivers of following cars as in the exercise of reasonable care he should have known might be affected or endangered by such a turn. b. If Mr. Sanborn in fact signaled effectively his intent to turn left to all following drivers whom he reasonably believed might be affected or endangered by such a turn, he cannot be found guilty of any violation of the provisions" of such statute.

The Court did not give the requested instructions and after reading to the jury pertinent parts of RSA 263:34-37 instructed them "that Mr. Sanborn violated the requirements of this statute, but . . . in order that Mr. Cyr might recover . . . you must go one

step further and find that such violation caused the accident . . . [and if you so find] your verdict will be for Mr. Cyr, provided you have found Mr. Cyr himself was free from fault." Sanborn argues that "upon proper construction of the statute two issues should have been submitted, the first being whether Sanborn was negligent or at fault in turning when he did and the second whether he was negligent or at fault in failing to give a hand signal." He maintains that the Court's refusal to charge as requested and the charge as given constituted reversible error.

Sanborn's argument that the Court should have submitted to the jury the issue of whether he violated the statute by turning when his turn could not be made with reasonable safety is of no avail. This issue was not covered by his requests for instructions. The charge submitted to the jury the issue of whether Sanborn's conduct on that evening was a reasonable use of the highway and whether he acted as the average prudent person would have acted under the circumstances. It is reasonably certain the jury understood from the charge as a whole that the issue of Sanborn's conduct in making the left turn as he did was being submitted to them. *Paradis* v. *Greenberg*, 97 N. H. 173, 175. Furthermore, after the charge, Sanborn failed to bring to the attention of the Court this alleged deficiency in the instructions for corrective action. *Bourassa* v. *Railway*, 75 N. H. 359, 362; *Leavitt* v. *Benzing*, 99 N. H. 193, 195.

The following evidence was uncontradicted. While Sanborn was traveling from a point 300 feet north of the intersection of the Highway and Sanatorium Road to a point 50 to 60 feet before his turn there were two cars following immediately behind his. One of them was about 40 feet behind his truck, another about 40 feet behind that car. There were also other cars behind those one of which turned out to be the Cyr car. Although Sanborn was aware of this situation he gave no signal of a left turn either by a signal lamp or mechanical device of a type approved by the Commissioner of Motor Vehicles or by hand and arm extended horizontally from the left side of his vehicle. RSA 263:34, 35, 36. On these incontrovertible facts no reasonable man could conclude otherwise than that Sanborn's conduct was a plain violation of the above statute and the Court properly so instructed the jury. *Lynch* v. *Bissell*, 99 N. H. 473, 476, 477; *Eastman* v. *Herrick*, 87 N. H. 58. The Court's action in both instances was proper and Sanborn's exceptions thereto are overruled.

Sanborn's requests 6 c and 6 d asked the Court to instruct the jury in substance that he could not be found guilty of causal negligence if by flashing his brake light off and on he signaled his intention to turn as effectively as he would have by extending his hand and arm or if the accident would have occurred even if he had extended his hand and arm during the last one hundred feet before commencing his turn.

The obvious purpose of these requests was to have the Court charge the jury that Sanborn's violation of the provisions of RSA 263:34-36 would not prevent recovery by him unless his violation caused or contributed to cause the accident. Sanborn's counsel had previous to the charge forcefully argued to the jury the necessity that a statutory violation be causal of the accident in order to affect the verdict. "Noncompliance with a statute doesn't come to a single blessed thing — it comes to nothing, unless the noncompliance caused the accident . . . if . . . compliance with the statute wouldn't have affected the situation in the least, then a person's failure to comply comes to nothing. It doesn't constitute negligence causing the accident, and it is just out of the window as far as the case is concerned."

The Court charged the jury in the following terms: "Now, in this case you are instructed that Mr. Sanborn violated the requirements of this statute [RSA 263:34-36] but that is not enough to find him guilty of legal fault, in order that Mr. Cyr might recover. As I have said before, you are instructed that Mr. Sanborn violated the requirements of this statute, but you must go one step further and find that such violation caused the accident. If you find that he violated the statute and I instruct you that there was such violation — and you also find that such violation caused the accident, then your verdict will be for Mr. Cyr, provided you have found Mr. Cyr himself was free from fault." Similarly after instructing the jury as to the provisions of another statute (RSA 250:2) the Court continued "Now, apply that statute to this case, did Mr. Sanborn violate this statute? If so, was such violation causal? That is, did it cause the accident. If it did, Mr. Sanborn is guilty of legal fault." The Court also charged "If Mr. Sanborn was at fault in any way and such fault or violation of a statute caused the accident, Mr. Cyr is entitled to a verdict at your hands if he, Mr. Cyr, was free from fault; and conversely, if Mr. Cyr was at fault and his fault or negligence caused or contributed to cause the accident, Mr. Sanborn, in his

counterclaim, is entitled to a verdict at your hands, provided, of course, that he, Mr. Sanborn, was free from fault."

It was the duty of the Trial Court to fully and correctly instruct the jury as to the law applicable to the case and to so phrase his instructions that it was reasonably certain the jury understood them. *Davis* v. *State,* 94 N. H. 321, 323. The extent to which rules of law shall be given specific application to the claims of the parties and the facts disclosed by the evidence in a given case must be left to the sound discretion of the Trial Court, provided the jury is fully and correctly instructed. *Dane* v. *MacGregor,* 94 N. H. 294, 299. Considering the charge as a whole (*Lamontagne* v. *Railway,* 97 N. H. 6, 12) it was so worded as to convey to the jury as laymen that they were to consider whether Sanborn's violation of RSA 263:34-36 caused or contributed to cause the accident and should so find before charging him with responsibility for the accident and it is reasonably certain the jury so understood from its wording. This was sufficient. *Paradis* v. *Greenberg, supra; Butler* v. *King,* 99 N. H. 150, 153.

Sanborn's exceptions to the Court's charge submitting to the jury the emergency and instinctive action doctrines pertaining to Cyr's conduct must be overruled. He testified he was traveling at about 35 miles per hour on a straight road 30 feet wide with no traffic in the opposite direction. He increased his speed and passed a car immediately in front of him. While in the left lane and going at a speed of 45 to 50 miles per hour he came abreast of a second car. He was then about 100 feet north of the intersection of the Highway and Sanatorium Road. Cyr testified that Sanborn, who it could be found was then giving no indication of his intention to make a left turn, made a sharp turn to the left when about 60 to 70 feet ahead of Cyr. Under these circumstances it was proper for the Court to submit for the jury's consideration the issues of whether Cyr was called upon to take immediate action to meet the dangers of a sudden and unexpected occurrence not occasioned by his own fault (*Frost* v. *Stevens,* 88 N. H. 164; *Bonenfant* v. *Hamel,* 96 N. H. 228) and whether the time was too short for anything but instinctive action not due to any prior negligence or fault of his. *Britton* v. *Glass,* 91 N. H. 218, 219; *Moulton* v. *Nesmith,* 94 N. H. 23.

Sanborn's remaining exception was to the Court's instructions in response to the following question submitted by the jury after it had retired to deliberate. "The jury needs further enlightenment

on what to do when the circumstances in a case indicate negligence on both sides but perhaps greater negligence on one than on the other." The Court's reply was: "If you all find that both parties were negligent in some degree, then you will return a verdict for the defendant in each case." The jury's question dealt with the issue of the effect of greater negligence by one party than the other and the Court's answer was directed to it. A supplemental instruction is sufficient if it contains a correct statement of the law when considered in connection with the main charge. *Osgood* v. *Maxwell*, 78 N. H. 35, 38; 89 C. J. S. 121. The Court had charged the jury in at least five instances that any statutory violation must be causal to affect their verdict. "It must be understood that the jury have sufficient intelligence, after a legal principle has been correctly stated, with its proper qualifications, to understand, when the judge has occasion again to refer to the principle, that he must mean to speak of it as subject to the same qualifications he had before stated." *Osgood* v. *Maxwell, supra,* 38.

*Exceptions overruled.*

WHEELER, J., did not sit; DUNCAN, J., dissented in part; the others concurred.

DUNCAN, J., *dissenting in part:* The jury was instructed that the defendant Sanborn violated the requirements of the statute relating to turning signals (RSA 263:34-36), and that they "must go one step further and find that such violation caused the accident." If the charge as a whole gave the jury to understand that the issue of causation was for their determination, it furnished them with no criteria by which to decide whether the statutory violation was causal. *Cf. Eastman* v. *Herrick,* 87 N. H. 58, 61. This in my judgment was an "important omission from the charge" (*Perlman* v. *Haigh,* 90 N. H. 404, 405) which fell short of satisfying the ultimate duty of the Court to state the law "fully and correctly." *Burke* v. *Railroad,* 82 N. H. 350, 362. Requests 6 c and 6 d served to direct attention to the omission, which related to a decisive issue. "Liability depended upon it" (*Smith* v. *Hooper,* 89 N. H. 36, 39), and the fairness of the trial required that the jury be furnished, however briefly, with some standard by which to determine it. *Simoneau* v. *Railroad,* 78 N. H. 363, 365; *Nickerson* v. *Bentley,* 89 N. H. 533, 534; *Davis* v. *State,* 94 N. H. 321;

*Burgess* v. *Railroad*, 98 N. H. 372, 380. The supplemental instructions which were later given omitted any reference to causation and could serve only to compound the error of the original charge. I would sustain the defendant's exceptions to denial of his requests 6 c and 6 d, and to the supplemental instructions to the jury. I agree that the other exceptions are properly overruled.