64

Rockingham
No. 7013

WENDELL ACKERMAN, ADMINISTRATOR OF THE
ESTATE OF GAIL BLANCHARD

v.

WILLIAM D. MARCH

LAWRENCE D. ROBIE, SR., ADMINISTRATOR OF THE
ESTATE OF LAWRENCE ROBIE

v.

SAME

CHARLES E. BLANCHARD, SR., ADMINISTRATOR OF THE
ESTATE OF FRANK E. BLANCHARD

v.

SAME

February 27, 1976

*James J. Kalled,* by brief and orally, for the plaintiffs.

*Sulloway, Hollis, Godfrey & Soden* and *Martin L. Gross (Mr. Gross* orally) for the defendant.

LAMPRON, J.   Three actions for wrongful death resulting from an automobile collision in Durham on June 25, 1970. Trial by jury with a view, before *Mullavey,* J., resulted in verdicts for the defendant. Plaintiffs excepted to the removal of certain issues from the jury and to the failure of the court to charge on a particular issue. These and other exceptions were reserved and transferred.

The main issues on this appeal are (1) the withdrawal from the jury by the trial court of the issue whether defendant could be found negligent for his failure to give way to the right while his car was being passed by an automobile driven by Frank E. Blanchard, whose administrator is one of the plaintiffs; and (2) the failure of the trial court to submit to the jury as a separate issue defendant's unreasonable speed.

Route 108 from Durham to Newmarket, a two-lane road, runs generally north and south. At about 12:30 a.m. on July 25, 1970, Frank E. Blanchard, who was killed in the later collision, was driving an automobile in a northerly direction with the other deceased Gail Blanchard and Lawrence Robie as passengers. Defendant William D. March was driving his automobile in a southerly direction. He had no passengers. Burt A. Richmond with three passengers was also driving southerly. He and his passengers were killed in a collision between his car and that of Frank E. Blanchard.

According to March, who was the only survivor, a car which turned out to be the Richmond vehicle started to ride his rear end. March speeded up but the other car was still in the same position. March saw a car coming from the opposite direction and the car behind him started to pass. March speeded up to prevent his passing. However, the Richmond car did pass him, pulled in front of him, and turned sideways. There was evidence that the Richmond car then went across the northbound lane and collided with the Blanchard car. The March car did not collide.

This appeal is based mainly on the events which took place between the time that the Richmond car came to the rear of the March car and the ensuing collision. It involves a section of Route 108 either about 2,500 or 1,850 feet in length, depending on what version of the conflicting testimony is adopted. This two-lane highway is virtually flat over this entire course with a low visibility

turn near the point of the accident. Travelling southerly, as were March and Richmond, one first encounters a no passing zone which stretches for approximately 900 feet, followed by a 600-foot passing zone for southbound vehicles only, followed by another 600-foot passing zone for northbound vehicles, and finally a no passing zone in which the collision took place. Although conflicting in most other respects, the evidence is fairly clear that at some point in that stretch of road the Richmond vehicle passed March by means of the northbound lane, returned briefly to the southbound lane in front of the March car, drifted to the shoulder of that lane, went out of control, veered sharply back into the northbound lane, where at an angle it collided with the northbound Blanchard vehicle.

The plaintiffs' first contention is that the trial court committed reversible error by withdrawing from the jury's consideration any issue of negligence which would be based upon the failure of defendant March to pull off the highway onto the shoulder, either prior to or during the passing maneuver executed by Richmond. At the close of all the evidence March moved that this issue be withdrawn. One of the grounds advanced was that the failure of the defendant in this respect could not be found to be causal of the collision. The record discloses that one of the reasons which motivated the trial court to grant defendant's motion was that any conclusion reached by the jury on this issue would be based on conjecture.

Our law is clear that if reasonable men on the evidence in the case could only reach a conclusion on a particular issue by conjecture, chance, or doubtful and unsatisfactory speculation it is the duty of the trial court to withdraw the issue from the consideration of the jury. *Dunham v. Stone,* 96 N.H. 138, 139, 71 A.2d 412, 413 (1950). There was testimony that the width of the shoulder in the southbound lane varied from very narrow to five or six feet wide. Another witness testified that the shoulder width available to southbound vehicles varied from ten feet to four feet. Another testified that because of the soft shoulder it would be very difficult to pull over from the traffic lane without going into a ditch. Defendant March testified that he did not observe enough of a shoulder to safely pull onto along the stretch of road in question. Considering the evidence most favorable to the plaintiffs, we hold that the trial court could properly rule on the evidence that any finding by the jury that a failure by the defendant to pull off the road was causal of the accident would be based on pure conjecture.

Defendant's motion to withdraw this issue was properly granted. *See Wadsworth v. Russell,* 108 N.H. 1, 4, 226 A.2d 492, 495 (1967). In view of the above it is unnecessary to consider plaintiffs' argument that it would be error to withdraw this issue because it was not mentioned in the pretrial order or their opening statement.

The next issue, which appears to be the focal point of this appeal, is plaintiffs' contention that the trial court's failure to charge the jury on the separate issue of defendant's speed constituted reversible error. Their declarations charged that "the defendant did then and there drive [his] said automobile in such a negligent manner as not to allow the Richmond vehicle to safely pass, and failed to comply with RSA 262-A:17 II thereby causing the collision." This ground of liability, among others, was stated as a claim of the plaintiffs in the pretrial order. Their counsel in his opening statement explained that plaintiffs' formula to prove defendant wrong "is a very simple theory. We say that Mr. March violated that passing statute [RSA 262-A:17] . . . and the issue that will be presented to you is whether that violation caused the wrongful deaths of those three decedents . . . our contention is that it's . . . an undisputed fact . . . that the statute was violated, and the only jury issue in this case is whether or not it was causal of the deaths . . . ." The plaintiffs' requests for instructions were also based on defendant's causal violation of the same passing statute and did not contain a request to charge unreasonable speed as such.

The matter of charging speed as a separate issue was discussed in a conference between court and counsel after the close of the evidence. A fair reading of the colloquy can lead to the conclusion that plaintiffs' counsel raised the issue "just covering the alternatives" in the event that the court should rule that RSA 262-A:17 did not apply in a no passing zone or for some other reason. Plaintiffs did except to the charge because of the trial court's failure to instruct the jury on the separate question of speed. They also raised the same objection in their motion to set aside the verdict.

RSA 262-A:17 reads as follows: "Overtaking a Vehicle on the Left. The following rules shall govern the overtaking and passing of vehicles proceeding in the same direction, subject to those limitations, exceptions and special rules hereinafter stated:

"I. The driver of a vehicle overtaking another vehicle proceeding in the same direction shall pass to the left thereof at a safe distance and shall not again drive to the right side of the roadway until safely clear of the overtaken vehicle.

"II. The driver of an overtaken vehicle shall give way to the right

in favor of the overtaking vehicle on audible signal and shall not increase the speed of his vehicle until completely passed by the overtaking vehicle." The trial court properly withdrew, without objection, from consideration by the jury any negligence by the defendant based "upon his failure to stop following the collision or in any way based upon the manner in which he approached the scene after the Richmond vehicle went by him on the ground that irrespective of what his conduct was it couldn't be found causal of the collision." Hence any causal negligence of the defendant must have taken place between the time that the Richmond car started tailgating him and its collision with the Blanchard car.

Plaintiffs' brief summarizes as follows how their case was presented in evidence: "The theory on which the case was presented was that Mr. March, by increasing his speed, prevented the Richmond boy from passing where he could have safely done so: in addition, he increased his speed to such a high rate that he and the Richmond vehicle closed the distance between themselves and the oncoming vehicles extremely rapidly and when Richmond was faced with the options of striking the oncoming truck [preceding the Blanchard car], or be forced to leave the northbound lane, he elected to leave the northbound lane, but was travelling so fast that the mere act of rapidly changing lanes caused him to lose control" and collide with the Blanchard car. It seems from the above and the record that any speed of the defendant March which could have been found causal of the collision was the increased speed while being passed in violation of RSA 262-A:17 II. This statute was read to the jury by the trial court with proper instructions thereon.

The court's charge properly emphasized the issue of defendant March's violation of RSA 262-A:17 and its causal relation to the collision. It cannot be denied that this was the main theory of liability relied on by the plaintiffs. The trial court did not rule out other causal negligence by the defendant, but did not charge unreasonable speed separately. Part of the charge dealt with negligence generally and the need of its causal connection with the collision. On the record in this case the court's charge as a whole sufficiently covered the basis on which the jury could find the defendant liable for the collision. *See Martel v. White Mills,* 79 N.H. 439, 443, 111 A. 237, 239 (1920). We hold that the charge presented the case to the jury in such a manner that no injustice was done to the legal rights of the plaintiffs. *Poulin v. Provost,* 114 N.H. 263, 264, 319 A.2d 296, 297 (1974).

We have considered plaintiffs' other complaints about the charge. The first is that the court should have left out of its reading of RSA 262-A:17 the phrase "on audible signal." They maintain this could have misled the jury into thinking that the statute did not apply in this case as no such signal was given. However, the evidence was clear that the defendant knew the Richmond car was attempting to pass him. Plaintiffs took no exception to the inclusion of those words nor did they request a clarification before the jury retired, so they have no ground for relief. See *Cyr v. Sanborn*, 101 N.H. 245, 140 A.2d 92 (1958).

Finally the plaintiffs also complain that in withdrawing the issue of liability for failure to pull off the road, the trial court told the jury not to consider any allusion in the evidence "with reference to giving way to the right." They claim that the similarity between this language and a phrase in RSA 262-A:17 II could have served to confuse the jury as to the applicability of the statute. Considering the charge as a whole it is not likely that the jury was misled. *Cormier v. Conduff*, 109 N.H. 19, 22, 241 A.2d 795, 797 (1968).

*Judgments for the defendant.*

All concurred.